[Civ. No. 4168. Second Appellate District, Division One.—May 9, 1923.]

## LILLIE L. WHITING, Respondent, v. PERRY WHITING, Appellant.

[1] DIVORCE — DENIAL — APPEAL — ALIMONY, COSTS, AND ATTORNEYS' FEES—RES ADJUDICATA.—In an action by the wife for divorce, and in which the husband files a cross-complaint, the making

---

1. Allowance of temporary alimony, suit money, counsel fees, or costs pending appeal, notes, 3 Ann. Cas. 51; 15 Ann. Cas. 229; Ann. Cas. 1915B, 1249; 18 A. L. R. 1494.

and entry of a judgment denying a divorce to either party and denying plaintiff's motion for alimony, attorneys' fees, and costs will not preclude the court, on plaintiff's subsequent motion, from making allowance to plaintiff for alimony, costs, and attorneys' fees pending defendant's appeal from the judgment.

[2] ID.—EXTENT OF WIFE'S PROPERTY—ALLOWANCE OF ALIMONY AND ATTORNEY'S FEES — DISCRETION. — The evidence before the court having shown that the amount of property owned by plaintiff was nominal as compared with the amount of property owned by defendant, that her property was encumbered, that the income therefrom was insufficient to meet the operating expenses, and that she had no business or occupation but was working in a real estate office at a small salary, the trial court did not abuse its discretion in granting her motion for alimony, costs, and attorneys' fees pending defendant's appeal from the judgment denying a divorce to either.

[3] ID.—CHARGE OF DESERTION — APPEAL — RIGHT TO ALIMONY AND ATTORNEY'S FEES.—The wife is not to be denied alimony, costs, and attorney's fees pending the husband's appeal because of the fact that the husband, by cross-complaint, charged her with desertion, but the trial court found that she did not desert her husband, and that is one of the questions involved on appeal.

[4] ID.—ANTENUPTIAL CONTRACT — ANTICIPATION OF DIVORCE — RIGHT TO ALIMONY AND ATTORNEY'S FEES — PUBLIC POLICY — An antenuptial contract, wherein the parties attempt to fix the amount which the wife can recover in any future divorce action as alimony, costs, and attorney's fees, is against public policy and void, and the existence of such a contract does not preclude the court from making an allowance to the wife as alimony, costs, and attorney's fees pending the husband's appeal from a judgment denying a divorce to either party, notwithstanding the wife has theretofore received a sum in excess of that specified in the contract.

APPEAL from an order of the Superior Court of Los Angeles County allowing alimony, costs, and attorneys' fees to the wife pending the husband's appeal. John W. Summerfield, Judge. Affirmed.

The facts are stated in the opinion of the court.

4. Validity of anticipatory contract making provision for wife in event of her obtaining divorce for subsequent fault of husband, notes, 11 Ann. Cas. 377; Ann. Cas. 1915A, 811; Ann. Cas. 1918E, 902; 23 L. R. A. (N. S.) 880; L. R. A. 1918A, 384.

R. L. Horton for Appellant.

G. P. Adams and W. W. Orme for Respondent.

CURTIS, J.—This is an appeal from an order requiring the defendant to pay plaintiff alimony, costs, and attorneys' fees on appeal in an action for divorce. The original action was instituted by the plaintiff to secure a decree of divorce against the defendant on the ground of cruelty. The defendant, in addition to his answer denying the charge of cruelty, filed a cross-complaint against the plaintiff asking for a decree in his favor on the ground of cruelty and desertion. The action was tried and the court denied relief to either party. It also decreed that each party pay its own costs and denied the motion of plaintiff for alimony and attorneys' fees. The decree was entered in June. 1920, and the defendant appealed therefrom. The judgment in said action (being action No. 4166) was affirmed by opinion this day filed (*ante,* p. 153 [216 Pac. 91]). On May 23, 1921, plaintiff moved said superior court for an order requiring defendant to pay plaintiff a reasonable sum as costs and attorneys' fees on appeal, and for alimony pending the appeal of said action by said defendant. The motion was heard by the court and the defendant ordered to pay plaintiff the sum of $200 costs and $1,000 attorneys' fees, and the further sum of $150 per month alimony during the pendency of said appeal. It is from this last-named order that defendant has taken the present appeal.

Defendant strenuously insists that the order appealed from cannot be sustained and enumerates the following grounds why the same should be set aside:

First, the court, at the conclusion of the trial of the action, having entered its decree that each party pay its own costs, and denying plaintiff's application for attorneys' fees and alimony, this decree was *res adjudicata,* and the court had no jurisdiction to grant a subsequent application for either alimony, costs, or attorneys' fees.

Second, the plaintiff had ample means of her own for her support and the costs of the action.

Third, the plaintiff had, without good cause or reason, deserted and abandoned the defendant prior to the commencement of the action and was, without sufficient cause or reason, living separate and apart from him.

Fourth, that the antenuptial contract, entered into between the parties, precluded the court from making the order appealed from.

We will consider these objections in the order in which they are made.

[1] First: Was the court precluded from making the allowance for alimony, costs, and attorneys' fees on account of its previous decree denying plaintiff alimony and attorneys' fees? This question must be answered in the negative. Our attention has been called to no authority supporting defendant's position. On the other hand, the exact question has been before our supreme court and decided adversely to defendant's contention. (*Gay* v. *Gay,* 146 Cal. 237 [79 Pac. 885].)

[2] Second: It is next insisted by defendant that the court erred in making said order for the reason that plaintiff had ample means of her own, both for her support and to meet the costs of said action. The recital in the order upon this phase of the controversy was as follows: "It further appeared to the court . . . that the defendant is a man of independent means and able to pay a sufficient sum for her support and maintenance, and her reasonable costs and attorneys' fees, and that plaintiff owns no property except an orange grove of about four (4) acres of land which has been greatly neglected, and of a value of about $8,000, but the same is encumbered by a mortgage of $3,700, and that the income from said grove is insufficient to pay the operating expenses of the same, and that she has no business or occupation and is working in a real estate office at a salary of $16.50 per week." While the order sets forth that the defendant is a man of independent means it does not purport to fix the value of his property, as it does the property of the plaintiff. However, in the affidavits of the parties filed on the hearing of the motion, the plaintiff gives the value of defendant's property in excess of $500,000, while defendant fixes the value at not to exceed the sum of $200,000. We think we are safe in assuming, therefore, that the defendant was possessed of property of the value of this latter figure at least, and that plaintiff's property was of the net value of approximately $4,300, without any net income therefrom, and that her only source of income was her salary of $16.50 per week. As we have heretofore

seen, at the time the order was made, the defendant had already appealed to the supreme court from the judgment denying his divorce, and it was pending this appeal that alimony was decreed and it was to enable plaintiff to defend herself against this appeal that the costs and attorneys' fees were ordered. Was it, under such a state of facts, within the power of the court to make the order complained of? The denial of the wife's application would have resulted in one of two situations. The defendant's appeal would have gone uncontested, or the wife would have been compelled to exhaust the small amount of property owned by her in defending herself against the proceeding instituted by defendant. It would have been unfair in the extreme to pit the wife in her penury against the husband in his affluence, in a proceeding commenced by him, and which, if successful, will not only sever the marital relation of the parties, in which the public, as well as they, have an interest, but it will cast a stigma upon the wife, against the infliction of which it was her right and duty to defend. Undoubtedly the lower court in its discretion took these facts into its consideration and made the order accordingly. In our opinion, we do not believe that this was any abuse of discretion.

In the case of *Kowalsky* v. *Kowalsky,* 145 Cal. 394 [78 Pac. 877], the supreme court sustained an order of the lower court awarding temporary alimony and counsel fees where it appeared that the wife had some means, probably sufficient to have maintained her during the pendency of the action, and to have enabled her to pay her costs and attorneys' fees. In that case the court says: "It was within the discretion of the court to award the plaintiff temporary alimony and counsel fees, notwithstanding the fact that it appeared that the wife was the owner of some corporation stocks of the value of $700 or thereabout. The plaintiff alleged in her affidavit that the defendant owned property worth $100,000 and was in the receipt of an income of $650 per month. The defendant made no denial of this allegation further than to say that his property was not worth $100,000, and that his monthly income was not $600. This was equivalent to an admission that the value of his property and the amount of his income, respectively, were one dollar less than these sums. The court might well conclude

that, with such abilities on the part of the husband, it would not be fair to the wife to compel her to sell all that she had in order to raise money wherewith to live and prosecute her action.''

In our opinion, the supreme court in this case satisfactorily answers defendant's contention that the lower court should not have made the order, for the reason that the plaintiff had ample means of her own for her support and costs.

[3] Third: The third ground upon which defendant appeals from the order is that the plaintiff deserted and abandoned him, and was at the date of the order living separate and apart from him. As stated before, defendant in his cross-complaint set up desertion as one of his grounds of divorce. The lower court found against him, and he has appealed from this judgment. The question as to whether the plaintiff deserted the defendant or not is the one question involved in that appeal. To hold in this proceeding that the plaintiff is not entitled to alimony and attorneys' fees because she deserted the defendant would be deciding that appeal in this proceeding. As the record stood at the time the order for alimony was made, the finding of the court was that the plaintiff had not deserted the defendant. Until that finding is set aside by the proper tribunal, it stands, and controls not only the parties to said action, but this court as well.

[4] Fourth: Lastly, defendant contends that the antenuptial contract, entered into between the parties, precluded the court from making any order for alimony, costs, and attorneys' fees. We will not discuss the fairness or unfairness of this agreement, nor will we pass upon the question as to whether the plaintiff, prior to executing the same, sought and received proper and sufficient independent legal advice as to her rights thereunder. In view, however, of what has been said in the briefs of counsel, we are led to observe that if there is any defect in the contract, it is the fault of defendant, and not that of the plaintiff. If the contract is cold and harsh, mercenary in spirit and lacking in any terms of love and affection, which we would expect to find in an agreement of this nature, these shortcomings must not be attributed to the plaintiff. While she had undoubtedly been consulted in a general way as to its terms,

the real preparation of the document was intrusted to the defendant. He, or someone in his behalf, dictated its phraseology and selected its words from beginning to end. If any criticism, therefore, is to be indulged in, relative to its contents, such criticism comes with ill grace from the lips of the defendant.

The contract, in its preamble, recites that the · parties thereto contemplate marriage; that they each have separate property, which they consider for the best interests of each should be defined and protected by an agreement prior to marriage, and that the consummation of the contemplated marriage is declared to be sufficient and valuable consideration for all the conditions and requirements of the agreement. The first paragraph of the contract refers wholly to the property of the parties, then follow the second, third and fifth paragraphs (there is no fourth) in these words:

"Second: It is further agreed by the said party of the first part hereto that in case of the separation or divorce of the parties hereto or the death of the party of the second part that in either or any of said events that the said party of the first part shall and will accept the sum of Five Thousand ($5,000) Dollars in full payment and settlement for any, each and every claim of any nature or character whatsoever against the said party of the second part, his property or estate, and it is further agreed that said sum of $5,000 shall include in that event each and all claims for attorney's fees, separate maintenance, allowance, alimony, property claims, or any claim of any kind or character that the said party of the first part may or shall have by reason of being or having become the wife of the said party of the second part, including each and all rights of inheritance, homestead rights and widow's allowance, and upon payment or tender of said sum of $5,000 by the said party of the second part, his agents, heirs or legal representatives, within a reasonable time after said event or either of said events shall occur, said first party hereby agrees to and does waive each and all claims of any nature or character whatsoever against the said party of the second part or his property or estate except what he may provide for said party of the first part in his last will and testament, it being however understood and agreed that this does not and shall not con-

stitute an agreement to leave any sum whatsoever to the said party of the first part by last will and testament.

"Third: It is further mutually agreed and understood between the parties hereto that should either party bring suit for divorce against the other at any time that they or either of them shall not ask for or accept from the court any sum or allowance or property of any kind or character not provided for in this agreement, it being mutually agreed and understood that this constitutes a settlement of each and all such claims between the parties hereto and a complete and full settlement of property rights between them; except that . this agreement shall in no way affect the custody of children, issue of said marriage, and this to be valid and binding no matter what charge might be alleged or proven in any such divorce action. And should the court for any reason whatsoever grant to the said party of the first part a larger sum as alimony, costs, or attorney's fees in excess of said sum of $5,000, then and in that event the said party of the first part hereby agrees to waive in a legal and satisfactory manner each and all claims to anything in excess of the said $5,000 above mentioned.

"Fifth: It is further agreed and understood between the parties hereto that up to the present time there does not exist between the parties any mutual agreement or promise of marriage but although the same has been in contemplation the said contract of marriage has not yet been entered into but upon the signing of this agreement the said contemplated agreement and promise of marriage shall become binding each upon the other and upon the signing of these presents each of the parties hereto agrees to consummate said vows of marriage in a legal and usual manner."

From the portions of the contract above set out, it will be seen that the limit plaintiff could receive from the defendant in case of separation or divorce would be the sum of $5,000, which sum would include alimony, costs, and attorneys' fees. At the hearing of the motion, defendant contended that while they were living together as husband and wife he had advanced plaintiff money, which she had used on her own separate property, and which, together with such sums as he had paid her since the separation, far exceeded the sum of $5,000, and, therefore, the court had no authority to compel him to make any further payments. We do not under-

stand that it is seriously contended by the plaintiff that she has not received at least $5,000 from the defendant at the times and in the manner in which he claims that he advanced the same to her. The position of plaintiff is that, admitting that she has received from the defendant the sum of $5,000, as claimed by him, still the order is valid for the reason that the antenuptial contract, wherein it attempts to fix the amount which plaintiff can recover in any future divorce action as alimony, costs, and attorneys' fees, is against public policy, and void.

"It is not the policy of the law to encourage divorce." (*Morgan* v. *Morgan,* 190 Cal. 522 [213 Pac. 993].) "Any agreement for divorce, or any collateral bargaining promotive of it, is considered unlawful and void. Under our code either husband or wife may enter into any agreement or transaction with the other, or with any other person, respecting property, which either might if unmarried. Notwithstanding this freedom to enter into any contract between themselves or with other persons, it has been held in this state repeatedly that an agreement between husband or wife founded upon a consideration to withdraw or abandon a defense to a suit for divorce, or *do anything to facilitate procuring the same, is illegal and void.* (*Newman* v. *Freitas,* 129 Cal. 283 [50 L. R. A. 548, 61 Pac. 907].) Quoting further from this case (129 Cal., on page 290 [50 L. R. A. 548, 61 Pac. 909]), the court says: "The courts of other states have expressed themselves similarly in reference to such contracts."

In the case of *McCahan* v. *McCahan,* 47 Cal. App. 173 [190 Pac. 458], the parties had entered into an agreement containing the following provision:

"6. In the event that any action for divorce shall ever be instituted between the parties hereto, then and in such event it is agreed that there shall be awarded to the party of the second part the sum of One Hundred ($100) Dollars in full settlement of all her claims for counsel fees and costs herein; and it is further agreed that said sum shall be awarded in one action only."

After the execution of said agreement the husband instituted an action of divorce against the wife who was the party of the second part in said agreement. Judgment was entered in favor of the husband, and the wife appealed

from the judgment and moved the court for costs and attorney's fees on appeal. The husband, resisting the motion, filed an affidavit in which he alleged the execution of the above-mentioned agreement and that he had fully complied therewith by paying to his wife the sum of $100. The court overruled his objection and made an allowance of $343 as costs and counsel fees on appeal. The appellate court sustained the order and held the contract void as against public policy. It not only held the contract void, but it sustained the order of the lower court upon the broad ground that the matter of costs and counsel fees in divorce actions had by legislative enactment been exclusively vested in the discretion of the trial court, and that any agreement made by the parties, attempting to settle such matters, is subject to the examination and sanction of the court.

In *Pereira* v. *Pereira*, 156 Cal. 1 [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488], the parties had entered into an agreement which provided that if the wife should thereafter procure a divorce against her husband, the latter would pay her the sum of $10,000 in full satisfaction of all her claims for alimony, costs, counsel fees, and her rights in the community property. The lower court declared the agreement void, and the supreme court in affirming the judgment uses the following language: "The real effect of the contract to pay the $10,000, so far as the husband is concerned, would be to provide against liability for a contemplated wrong to be subsequently inflicted by him upon his wife, and to liquidate such liability in advance of the commission of the wrong. The evidence and findings show that the defendant was then possessed of property worth about $77,000, was engaged in a very lucrative business, and was receiving an income of about $11,000 a year, which he had every reason to believe would continue. By this contract, if valid, he was left free to inflict upon his wife the most grievous marital wrongs, such as would compel her to obtain a divorce, secure in the protection of his contract that $10,000 would satisfy all her claims against him of a pecuniary nature or in relation to the community property. If he should, after its execution, be moved by evil impulse to commit anew the offenses against his wife which first gave her cause for divorce, or other acts having the same legal effect, the existence of a valid contract of this sort could

not but encourage him to yield to his baser inclinations, and inflict the injury. As it was obviously adapted to produce this result. it is to be presumed that this was one of the inducements which made him desire its execution. The law does not countenance such agreements. 'Any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result, . . . is void as *contra bonos mores.'* "

Our attention has not been called to any authority prescribing a different rule than that laid down in the cases above cited. The only suggestion we have received from appellant, offering any reason why the doctrine enunciated in these cases should not be followed, is that in the present action the contract was made prior to marriage, while those considered in the authorities above cited were made subsequent to marriage. We can see no good reason why any such distinction should be made. If contracts of this nature tend to facilitate the dissolution of the marriage relation, then they should not be sanctioned by the courts, irrespective of the time of their execution. If by such an agreement "the husband is left free to inflict upon his wife the most grievous marital wrongs, such as would compel her to obtain a divorce, and at the same time he could rest secure that the payment of the amount stipulated in the contract will satisfy all her claims against him of a pecuniary nature," would the situation of the parties be any different if the agreement had been made prior rather than subsequent to marriage? Would such a provision be any less a menace to the marriage relation, if made prior rather than subsequent to its consummation? If the existence of such an agreement would "encourage the husband to yield to his baser inclinations to commit marital offenses against his wife," is there any good reason to believe that his conduct would be less reprehensible from the mere fact that the instrument, by which he had sought thus to protect himself, was an antenuptial rather than a postnuptial agreement? We believe that all these questions should be answered in the negative, and that contracts like the one involved in the present action are a menace to the marriage relation and should not be tolerated, and this irrespective of the time when the same might have been executed in reference to the time of the marriage. We are, therefore, of the opinion that the con-

tract in this action is absolutely void, and its existence furnished no ground that would preclude the court from making the order appealed from.

We are further of the opinion that no good reason appears why the order appealed from should be disturbed by this court. There was no abuse of discretion on the part of the court in making the same.

The order appealed from is hereby affirmed.

Conrey, P. J., concurred.

Mr. Justice Houser, deeming himself disqualified, took no part in the above decision.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 5, 1923.