[Civ. No. 5668.   Second Appellate District, Division Two.—December 9, 1929.]

NICHOLAS B. HARRIS, Appellant, v. JOE MOORE, Respondent.

Joseph L. Call, for Appellant.

William R. Elam for Respondent.

CRAIG, Acting P. J.—The appellant instituted an action in the Municipal Court of the city of Los Angeles for services alleged to have been rendered to the respondent herein.

Inasmuch as the jurisdiction of this court in proceedings brought before us is fundamental, we are required to determine the question of our authority to review them, although it be not raised by the parties. By amendments to article VI of the Constitution (secs. 4b, 5, art. VI, Cal. Const.; Stats. 1927, chap. 77, p. 2389), the people voted on November 6, 1928, to limit appeals from the Superior Court to those proceedings wherein it has original jurisdiction. The effect of these amendments has heretofore been discussed by the District Court of Appeal, and by the Supreme Court, and in at least one instance the appeal was dismissed. (*Johnston* v. *Wolf*, (Cal. App.) 274 Pac. 1028; *Moye* v. *National Surety Co.*, (Cal. App.) 277 Pac. 499; Id., 208 Cal. 279 [280 Pac. 982].) In those cases, however, the appeals were perfected after said amendments became effective, whereas the instant case was appealed here on April 21, 1927. Judge Cooley, in his work on Constitutional Limitations, at page 62, observed: ''Retrospective legislation, except when designed to cure formal defects, or otherwise operate remedially, is commonly objectionable in principle, and apt to result in injustice; and it is a sound rule of construction which refuses lightly to imply an intent to enact it. And we are aware of no reasons applicable to ordinary legislation which do not, upon this point, apply equally well to constitutions.'' In Black on Interpretation of Laws, at page 20, it is said upon cited authority: ''A constitutional provision should not be construed with a retrospective operation unless that is the unmistakable intention of the words used, or the obvious design of the authors.'' In *Cassard* v. *Tracy*, 52 La. Ann. 835 [49 L. R. A. 272, 27 South. 368, 369], an appeal was perfected prior to the date upon which a constitutional provision became effective. The Supreme Court of Louisiana, reviewing the above and many other authorities upon the subject, remarked that previously to being deprived of jurisdiction the appellate court might have set aside the judgment. ''But no authority was vested in any other department of the government either to set the

judgment aside or to control the discretion vested in the appellate court in the premises, or in any other manner, without due process of law." It was there concluded: "It is in view of consequences such as these that all writers upon the construction of law concur in the opinion that, whether constitutional or statutory, it should be construed to operate prospectively only, unless such construction is absolutely precluded by the language used. . . . It must be presumed that the members of the convention which adopted the Constitution of 1898 were familiar with commonly accepted canons of construction, and that, when they intended any particular provision incorporated in that instrument to operate retrospectively, they formulated it in such language, as to leave no room for doubt." ▮ By section 4b, article VI, of our Constitution, the people ordained that "district courts of appeal *shall have* appellate jurisdiction on appeal from the superior courts (except in cases in which appellate jurisdiction is given to the supreme court) in all cases at law in which the superior courts are given original jurisdiction." That retroactive operation of this provision was not intended is manifest from the language of section 2, article XXII, of our Constitution, which is similar to that considered in *Cassard* v. *Tracy, supra*. Except upon the abolition of a court, when provision for the transfer of its proceedings is made, the only mention of the effect of the Constitution upon pending litigation appears in said section. It is there expressly ordained that "all writs, prosecutions, actions, and causes of action, except as herein otherwise provided, shall continue and remain unaffected by the adoption of this Constitution." We conclude that the instant case, having been appealed prior to the adoption of section 4b of article VI, was not affected thereby.

▮ It appears that in response to a telephonic communication from respondent, a representative of the detective agency called upon him at his place of business, and was informed that respondent was desirous of obtaining a divorce from his wife, inquiring if the detectives could obtain sufficient evidence to accomplish such purpose. To quote the evidence presented by appellant: "Mr. Holcomb testified that he agreed to get sufficient evidence for defendant and appellant herein to get a divorce and agreed that

if they caught Mrs. Moore in a room with a man that they wanted three hundred dollars ($300.00) bonus for extra services." "Mr. Cowen testified that he explained the terms of the contract to Mr. Moore and that he agreed to get sufficient evidence to file a divorce action or to obtain a divorce from Mrs. Moore." "Joe Moore testified . . . that Mr. Holcomb then explained the terms of the contract and said that they could get sufficient evidence for him to get a divorce." It was further testified that the two operatives thereafter saw Mrs. Moore in the embraces of a man other than her husband while seated upon a park bench. The Superior Court held that the contract of employment was against public policy, and was therefore illegal. This is the only question presented for decision.

Each of the parties relies upon *Hare* v. *McGue,* 178 Cal. 740 [L. R. A. 1918F, 1099, 174 Pac. 663, 664], wherein it was held that inasmuch as the investigators were to be paid whether they procured witnesses or discovered any evidence or not, the contract was not against public policy; that they did not agree "nor were they asked by appellant to procure witnesses to testify to any particular state of facts, but only to obtain from witnesses information of what they knew, and report the matters to the attorney for appellant." It appears that in the instant case the operatives were employed for an agreed daily fee to make an investigation, and that they were promised a bonus upon conditions specified. The defendant testified that they did nothing. In this he was contradicted by the agents of appellant, but there is no contention that the bonus was earned. We think it also apparent that they would not have been employed had they not represented to the respondent that they could and would furnish sufficient evidence for the accomplishment of the desired litigation, and that the contract was founded upon such contingency. For aught that is before us the detectives knew nothing of the probability of existing grounds for divorce, yet the uncontradicted evidence showed that "they would get sufficient evidence for him to get a divorce." They were not employed to obtain from witnesses information of what they knew and to report such matters, but solely upon their agreement to furnish a particular state of facts. As stated in the case above cited: "It is the element of payment contingent on the success of

the litigation in which the evidence is to be produced, or the fact that the agreement is to procure evidence not of facts as they exist, but of particular facts necessary to the success of the party litigant who contracted for their·production, which vitiates the contract.''

The judgment is affirmed.

Thompson (Ira F.), J., and Burnell, J., *pro tem.*, concurred.