[Civ. No. 11701. First Dist., Div. One. Aug. 28, 1941.]

ISAAC LIONEL ETTLINGER, Plaintiff; MELVILLE MARX, as Executor, etc. (Substituted Plaintiff), Appellant, v. MILLICENT L. SEARS ETTLINGER, Respondent.

John Elliott Cook and Werner V. Olds for Appellant.

John H. Crabbe for Respondent.

KNIGHT, J.—Subsequent to the submission of this appeal on the merits, Isaac Lionel Ettlinger, by whom the appeal was taken, died, and on August 28, 1941, on stipulation, the representative of his estate was substituted as party plaintiff and appellant, and it was further stipulated that the rights of the parties did not abate upon the death of the said Isaac Lionel Ettlinger. However, the decedent will be hereinafter referred to as the appellant.

The appeal is from an order granting a nonsuit in a non-jury trial. The complaint bears the caption "Complaint for Declaratory Relief," and appellant contends that such is the nature of the action. But the substance of the complaint, its allegations and prayer, show that it is a suit in equity brought to annul the adjudications of an interlocutory and a final judgment of divorce confirming and adopting a property settlement agreement, and to enjoin the enforcement of the executory portions of said adjudications that respondent do have and recover from appellant the monthly sum of $250 until her death or remarriage, upon the ground that the property settlement agreement is *contra bonos mores*.

The suit was commenced over six and a half years after the entry of the interlocutory judgment; and the respondent, besides upholding the legality of the property settlement agreement, contends in support of the ruling granting the nonsuit, first, that the two judgments entered in the divorce

action and a judgment on appeal (*Ettlinger* v. *Ettlinger*, 3 Cal. (2d) 172 [44 Pac. (2d) 540]) rendered by the Supreme Court six years after the entry of the interlocutory judgment, involving the particular portions of the divorce judgments here sought to be annulled, are and each of them is *res judicata* upon the question of the legality of said property settlement agreement; and secondly, that, under the undisputed facts here shown, established equitable doctrines preclude appellant from being granted any affirmative relief. It is our conclusion that the points so made by respondent are well taken.

The facts relating to the two latter issues may be stated as follows: The appellant, Isaac Lionel Ettlinger, and the respondent, Millicent L. Sears Ettlinger, were married in December, 1920, and separated in February, 1927. There were no children, and about two years subsequent to their separation and on March 28, 1929, Mrs. Ettlinger was granted an interlocutory judgment of divorce upon the ground of desertion. The question of the legality of the property settlement agreement was made an issue by the pleadings in the case. In this regard the record shows that Mrs. Ettlinger alleged in her divorce complaint: "That heretofore, to wit, on or about the 20th day of March, 1929, an agreement was entered into between the plaintiff and the defendant for the settlement of their property rights, that said agreement is fair, just and equitable *and that the same was not made for the purpose of facilitating or expediting a divorce by the parties,* but for the sole and only purpose of settling the property rights of the parties" (italics ours); and in his answer appellant denied all of the foregoing allegations. At the trial of the case appellant was represented by counsel; the agreement was introduced in evidence by respondent, and she gave testimony with respect thereto. It is a lengthy document, covering thirteen legal-size typewritten pages; and under its terms appellant agreed, among other things, to execute a deed conveying to Mrs. Ettlinger residential property in Monterey County (title to which stood in her name), to make certain cash payments aggregating $4500, of which Mrs. Ettlinger was to receive $1500, and in addition to pay her the monthly sum of $250 until her death or remarriage. After hearing the evidence introduced by respondent in support of her case the court found that the allegations of the complaint, which included the allegations above quoted relating to the

property settlement agreement, were true and sustained by testimony free from legal exception as to its admissibility or sufficiency; and the interlocutory judgment contained, among others, these adjudications: "It is further ordered, adjudged and decreed that that certain agreement for the settlement of the property rights . . . a copy of which is attached hereto . . . and by such reference made a part hereof . . . be, and the same is, hereby ratified, approved and confirmed. And it is further ordered, adjudged and decreed that in pursuance of the aforementioned agreement the plaintiff [Mrs. Ettlinger] *do have and recover* from the defendant the sum of Two hundred fifty ($250.00) dollars per month commencing with the month of April, 1929, and payable on the first day of each and every month until the death or remarriage of the plaintiff." (Italics ours.)

Appellant permitted the interlocutory judgment to become final without attack by way of appeal or otherwise; and likewise he permitted the final judgment of divorce entered in the same form a year later to become final without any attack being made thereon. Meanwhile, in conformity with the terms of said interlocutory judgment, appellant executed said deed, and made said cash payments; and for nearly four years he accepted and carried out the remaining provision thereof by making said $250 monthly payments. At the end of that time and on March 7, 1933, he applied to the superior court for, and over Mrs. Ettlinger's objections, was granted an order reducing the amount of the monthly payments to $175 for a period of one year. Mrs. Ettlinger appealed and the Supreme Court reversed the order, holding that for the reasons given in the decision the agreement was immune from judicial modification. (*Ettlinger* v. *Ettlinger, supra.*) In so holding the court went on to say: "We are satisfied from an examination of the entire agreement, having particular reference to the above-quoted provisions thereof, that it was the intention of the parties to definitely, fully and permanently adjust and settle all of their property rights. The agreement indicates that the monthly payments to be made thereunder by defendant to plaintiff, stated to be for the latter's 'support and maintenance', constituted an integral and important element in the amicable adjustment and liquidation of such property rights. In our opinion, the contract suggests that such payments were to be made to and received by

plaintiff as part of the property settlement and in lieu of property rights. . . . That the parties may contract with regard to their properties and their respective interests therein is now settled. Though not binding in the first instance on the court in which the divorce action is pending, such contract may be approved and confirmed by the court, and if appropriately referred to and adopted in its decree, as here, such decree, as to the matters covered by the agreement, becomes immune from subsequent modification.'' That decision was rendered on April 16, 1935, and about six months later appellant instituted the present suit.

From the foregoing it becomes obvious that the suit is nothing more than an open attack upon the plain provisions of a judgment for the payment of money, made more than six years after said judgment has become final, upon the ground that those provisions are based upon an alleged immoral contract in which appellant was admittedly *in pari delicto;* and we are in complete accord, not only with respondent's contention that the judgments of divorce and the judgment rendered by the Supreme Court on appeal are *res judicata* upon the issue of the legality of said property settlement agreement, but also with respondent's further contention that under the existing facts and circumstances the trial court herein, sitting as a court of equity, was fully justified in refusing to intervene in appellant's behalf by granting him the equitable relief sought by him in the present suit. In this latter respect there would seem to be no difference in principle between the present suit and one whereby a party seeks through equity to nullify a judgment of divorce which has become final, upon the ground that it was procured through a collusive agreement to which he was a party. (*Godfrey* v. *Godfrey,* 30 Cal. App. (2d) 370 [86 Pac. (2d) 357]; *Bancroft* v. *Bancroft,* 178 Cal. 359 [173 Pac. 579, L. R. A. 1918F, 1029].) As said in the former case, ''When an interlocutory decree of divorce is procured by collusion of the parties to the action, equity will not interfere with the final divorce at the instance of either of the culpable parties.'' (Citing cases.) And in the latter case, the following language used by Mr. Justice Shaw in his concurring opinion would seem particularly apt to the present situation. He said: '' . . . while it is to the interest of the state that divorces shall not be obtained by collusion between the parties, that interest does not extend so far as to prevent the opera-

tion of the doctrine that equity will not relieve a party from an improper judgment rendered upon his own invitation, upon full knowledge of the facts and without coercion, imposition, or fraud upon him.''

The fact that appellant may not have seen fit to stress his claim of illegality of the property settlement agreement at the time of the granting of the judgments of divorce or when he sought a modification of the property settlement adjudication or in defending the appeal from the order made in that behalf, does not strengthen his position, for admittedly he could have done so on any of those occasions; and having failed so to do, he was precluded from doing so afterwards in a proceeding instituted for that specific purpose. (*Godfrey* v. *Godfrey, supra; Allen* v. *Allen,* 159 Cal. 197 [113 Pac. 160] ; *Short* v. *Short,* 106 Cal. App. 210 [288 Pac. 1111].) Appellant cites and seems to rely strongly on the cases of *Schley* v. *Andrews,* 225 N. Y. 110 [121 N. E. 812], and *English* v. *English,* 9 Cal. (2d) 358 [70 Pac. (2d) 625, 128 A. L. R. 467]. But neither case is here controlling, for, among other reasons, the factual situations there involved were essentially different from the one here presented.

Irrespective, however, of the two points above discussed, and even assuming that under some possible theory appellant could, in the present suit, go behind said judgments and assail the legality of the agreement upon which they are founded, it is manifest that the trial court was fully warranted in granting the nonsuit upon the ground that appellant failed to produce any evidence which would support a finding that said contract was *contra bonos mores.* The only evidence adduced established to the contrary. In this regard the record discloses that appellant offered no oral testimony whatever. All he did was to introduce in evidence the judgment roll and files in the divorce action, a transcript of testimony taken at the trial thereof, and a copy of respondent's opening brief filed in the Supreme Court on the appeal from the order of modification. The facts appearing therefrom were these: Appellant deserted respondent and continued to live separate and apart from her for more than a year, at the end of which period, to-wit, in February, 1928, respondent sued for separate maintenance upon the ground of desertion. Appellant, answering, filed a cross-complaint for divorce upon the ground of cruelty. During the several months which followed ap-

pellant's deposition was taken, whereby it was revealed that he was the owner of separate property of the net value of $265,000. Finally the parties arrived at a property settlement which was reduced to writing and signed on March 20, 1929. It embodied these provisions: "WHEREAS, it is the desire of both parties hereto that all of the property rights of the parties hereto respectively shall be finally adjusted, settled, and determined, and WHEREAS, the parties hereto have agreed to adjust, liquidate and settle between themselves all rights and claims of each as against the separate property of the other, there being no community property. NOW THEREFORE, it is hereby agreed and stipulated by and between the parties hereto as follows: 1. This agreement does not in any way and is not in any way intended to bind either of the parties hereto as to their respective courses concerning the filing, maintenance or defense of any action for divorce or as to any facts necessary to the maintenance of any action for divorce or any defense thereto, and the parties hereto shall be entirely free as to their respective action in the matter of applying for a divorce or resisting any application for a divorce or any other steps in any divorce action save and except as to the property rights of the parties hereto and the maintenance and support of the first party and the amount of the costs, expenses and attorneys fees and in those respects both of the parties hereto agree and stipulate as hereinafter set forth." Being thus entirely unrestricted by said agreement as to the exercise of any of her legal rights respecting court matters, respondent amended her complaint so as to ask for a divorce upon the ground of desertion, instead of a decree for separate maintenance on that ground. Appellant then filed an answer denying the allegations of desertion and a request for a dismissal of his cross-complaint; whereupon, on March 28, 1929, the divorce trial took place and the interlocutory judgment was granted, which as already pointed out ratified, approved and confirmed the property settlement agreement.

It appears, therefore, that at the time of the granting of the nonsuit the only evidence before the trial court bearing upon the legality of the property settlement agreement consisted of the agreement itself, which in direct terms declared that it was not made to facilitate a divorce, but left the parties entirely free to act as they saw fit; the allegations in respondent's divorce complaint that said agreement

was not entered into to facilitate a divorce, and the finding of the trial court that said allegations were true; the decrees of divorce based on said findings; and the decision of the Supreme Court refusing to modify said decrees. There was also the fact of the failure of appellant to appeal from either of the divorce decrees, and the fact that in making his application to modify the same, and in defending the appeal before the Supreme Court, he took the position that the agreement was valid. Furthermore, it was at no time claimed that the divorce was obtained by collusion, or that respondent did not have a meritorious cause of action for a divorce upon the ground of desertion. In that state of the record a finding that the agreement was *contra bonos mores* would have been entirely wanting in evidentiary support. (*Cookinham* v. *Cookinham*, 219 Cal. 723 [28 Pac. (2d) 1045]; *Queen* v. *Queen*, 44 Cal. App. (2d) 475 [112 Pac. (2d) 755].)

Appellant points out that respondent first filed suit for separate maintenance; that several months later she amended her complaint so as to ask for a divorce, and that the property settlement agreement was signed about a week before she amended her complaint. But certainly it cannot be said that these circumstances serve as ground for nullifying the agreement. Nor can the excerpt taken by appellant from the argument made by counsel for respondent in the brief filed by him on the appeal to the Supreme Court be considered as evidence against respondent in the present suit. It was simply a statement used by her counsel in an argumentative sense in presenting her appeal.

Appellant also calls attention to the fact that respondent's answer herein admitted a portion of the allegations of paragraph III of the complaint, which appellant construes as an admission by respondent that the agreement was *contra bonos mores*. An analysis of the allegations of paragraph III and the answer thereto would seem to demonstrate, however, that the admission does not go that far. In any event, in paragraph IV of appellant's complaint it was definitely alleged that the agreement was entered into for the purpose of facilitating a divorce, and this allegation was positively denied by respondent's answer. Again in paragraph VII of the complaint it was in effect alleged that the agreement entered into between the parties was "contrary to public policy and void and unenforceable"; and the allegations of that

paragraph also were positively denied by respondent's answer. Therefore, reading the complaint and the answer thereto as a whole, it is apparent that the admissions relied on by appellant by no means established a *prima facie* case that the agreement was *contra bonos mores*.

The remaining points do not require attention; nor do we deem any of the other authorities cited in appellant's briefs as here controlling.

The order is affirmed.

Peters, P. J., and Ward, J., concurred.