[L. A. No. 18144. In Bank. Oct. 15, 1943.]

ZOLA V. HILL, Appellant, v. JACK C. HILL, Respondent.

Haas & Home and John D. Home for Appellant.

Sarau & Thompson, H. L. Thompson and Roy W. Colegate for Respondent.

GIBSON, C. J.—This action was brought by a divorced wife to recover payments under a property settlement agreement executed on August 14, 1928, while the parties thereto were still husband and wife, but living separate and apart. The trial court found and concluded that the execution and delivery of the agreement "was at the time and date conditioned upon and in contemplation of, and for the purpose of promoting an immediate and forthwith dissolution of the marriage," and that the agreement was therefore void as against public policy and good morals. Judgment was entered for defendant from which plaintiff appeals.

Plaintiff and defendant were married in 1906 and separated in 1926 and it appears from the evidence that they had no intention or expectation of ever living together again. In 1926, defendant husband commenced an action for divorce in which plaintiff wife filed a cross-complaint for separate maintenance. It was stipulated here "that the judge who tried the case decided the case in favor of Mrs. Hill, but before signing the findings and judgment the judge passed away." Negotiations leading to the execution of the agreement in controversy were commenced two years later when plaintiff called upon Mr. Horton, defendant's attorney, at his request. In response to questions by Mr. Horton plaintiff stated she had grounds for divorce but she did not want to commence an action therefor; that she would however think the matter over and if she decided to get one it would have to be on her terms. On the same day defendant informed plaintiff that if she did not give him a divorce he would quit the practice of medicine, in which event he would not have enough to pay her anything. A few weeks later a second interview took place between plaintiff and Mr. Horton in which questions relating to support of plaintiff and the minor children of the

parties, in the event of a divorce, were discussed, but no agreement was reached. At the time of these conversations plaintiff was not represented by counsel, but shortly thereafter plaintiff notified Mr. Horton that she had employed Mr. Haas to represent her in future negotiations. After some discussion between the attorneys, Mr. Horton prepared and forwarded to Mr. Haas a property settlement agreement which recited that "in the event the party of the second part [plaintiff] does obtain an interlocutory decree of divorce, and thereafter obtains a final decree of divorce, that the following agreement is made as a full and complete property settlement between said parties, and full and complete settlement for the support and maintenance of the said party of the second part and the said two minor children" and "this agreement shall not become effective . . . until or unless the party of the second part may have obtained . . . a divorce." Mr. Haas returned the contract unsigned together with a draft prepared by him which omitted the provision just quoted. Following further discussions between the attorneys, the agreement prepared by Mr. Haas was signed by the defendant and mailed to Mr. Haas together with a letter from Mr. Horton reading as follows: "I am sending you these contracts . . . the same to be held by you and not delivered or used except in the event of an action being filed by Mrs. Hill for divorce against Dr. Hill and the obtaining of the decree of divorce by one or the other of the parties. I will appreciate your getting the complaint prepared, signed, filed and served as soon as possible, and I will then put in an appearance and advise you." A complaint charging defendant with desertion and seeking court approval of the property settlement agreement was filed on August 17, 1928, and within a few days thereafter the defendant filed an answer in which he also requested the court to approve the agreement. On September 7, 1928, an interlocutory decree was entered for plaintiff which provided that "it appearing that a full and complete property settlement has been entered into . . . said property settlement is hereby approved." Mr. Horton was present at the hearing of the case but it does not appear that he took any part in the proceedings. A final decree of divorce was entered on September 17, 1929, which contained the following provision: "The disposition of property and the payment of alimony is covered by the property settlement agreement heretofore entered into . . . the said agreement having been approved at the time of the trial of this cause."

The evidence clearly shows that the agreement was made in contemplation of divorce and conditioned thereon to the extent that it was not to become effective except upon "the obtaining of a decree of divorce by one or the other of the parties." In support of the findings it also may be inferred that plaintiff was unwilling to proceed with an action for the dissolution of the marriage unless a satisfactory agreement was entered into providing for a settlement of her property rights and for the support of herself and the minor children of the parties. Defendant was unwilling that the property settlement agreement should become effective until and unless a divorce was obtained by one of the parties, and his answer in the divorce action shows that he was desirous that all of the property rights of the parties including his obligations to support plaintiff be finally disposed of by the approval of such agreement in the judgment of divorce. It appears, however, that the parties had been separated for more than two years when this agreement was entered into and that they had no intention of ever living together as husband and wife again. Although plaintiff had a meritorious cause of divorce she did not tell defendant that she would get one, and there is no evidence whatsoever of collusion. No evidence was offered tending to show that defendant agreed not to defend an action or to do anything to facilitate the granting of a divorce. Defendant contends, however, that since the agreement was to become effective only in the event of divorce (a condition which he himself imposed), it is void as against public policy and he should not be bound thereby. Under the agreement plaintiff relinquished her right of inheritance and agreed to a division of property and the amount to be contributed by defendant for the support of herself and the minor children. Defendant asked the court to approve the agreement and limit his obligations according to its terms after plaintiff, in reliance thereon, refrained from asking the court for alimony and for a division of the community property. Certainly, as between the parties, every principle of justice and equity demands that defendant be compelled to stand by his contract and we do not believe in the circumstances here presented, that any rule of public policy requires that he be relieved of his obligations under this agreement.

Because preservation of the marriage relationship is considered essential to the maintenance of organized society, it has been stated generally that the law will not countenance any contract having for its object the dissolution of a mar-

riage. (*Howard* v. *Adams,* 16 Cal.2d 253 [105 P.2d 971, 130 A.L.R. 1003] ; *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880] ; *Newman* v. *Freitas,* 129 Cal. 283 [61 P. 907, 50 L.R.A. 548] ; *Loveren* v. *Loveren,* 106 Cal. 509 [39 P. 801] ; see Restatement, Contracts § 586 ; 6 Williston, Contracts (rev.ed. 1938) § 1743 ; 9 Cal.Jur. 636 ; Bishop, Marriage, Divorce, and Separation, § 169 ; notes, 14 So.Cal.L.Rev. 373 ; 130 A.L.R. 1008.) Agreements not to defend or to abandon a defense in a divorce action, to destroy or conceal evidence in proceedings for divorce, and to procure or furnish testimony of certain facts which will successfully support or defeat a divorce action, or which provide that payment to the party procuring evidence to be used in such an action is contingent upon the result of the action have been held void as parts of collusive arrangements to facilitate divorce. (*Lanktree* v. *Lanktree,* 42 Cal.App. 648 [183 P. 954] ; *Miller* v. *Miller,* 284 Pa. 414 [131 A. 236] ; *Beard* v. *Beard,* 65 Cal. 354 [4 P. 229] ; *Senter* v. *Senter,* 70 Cal. 619 [11 P. 782] ; *Roberts* v. *Roberts,* 83 Cal.App. 345 [256 P. 826] ; *Loveren* v. *Loveren, supra; Hare* v. *McGue,* 178 Cal. 740 [174 P. 663, L.R.A. 1918F 1099] ; *Harris* v. *Moore,* 102 Cal.App. 413 [283 P. 76] ; note 130 A.L.R. 1008.) Even in the absence of such a collusive arrangement certain agreements have been held void as *contra bonos mores* upon the theory they had a direct tendency to promote dissolution of the marriage relationship. Thus, the courts have refused to enforce an agreement by a husband to pay his wife a fixed sum in full satisfaction of her claims for alimony if he should thereafter give the wife cause for divorce. (*Pereira* v. *Pereira, supra; Whiting* v. *Whiting,* 62 Cal.App. 157 [216 P. 92] ; *Lane* v. *Lane,* 78 Cal.App. 326 [248 P. 686].) An agreement by the husband to pay the wife's counsel fees in the event of a divorce, and an agreement between a plaintiff in a divorce action and her attorney for a contingent fee have also been held void. (*McCahan* v. *McCahan,* 47 Cal.App. 173 [190 P. 458] ; *Newman* v. *Freitas, supra; Parsons* v. *Segno,* 187 Cal. 260 [201 P. 580] ; *Wiley* v. *Silsbee,* 1 Cal.App.2d 520 [36 P.2d 854], noted in 21 Va.L. Rev. 446 ; *Theisen* v. *Keough,* 115 Cal.App. 353 [1 P.2d 1015] ; *Ayres* v. *Lipschutz,* 68 Cal.App. 134 [228 P. 720], Restatement, Contracts, § 542(2).)

Property settlement agreements between husband and wife have in like manner been held invalid when regarded as inseparable parts of agreements for divorce which are contrary

to the public policy favoring preservation of marriage. Under the early common law, this policy was so inflexible as to be considered a barrier to agreements for separation and for the adjustment of property rights upon separation. (See *Gallemore* v. *Gallemore*, 94 Fla. 516 [114 So. 371, 372]; Madden, Persons and Domestic Relations, p. 333; 7 Minn.L.Rev. 592.)

■ It is now well settled, however, that a husband and wife may agree to an immediate separation, and having so agreed or having actually separated, may enter into contracts adjusting their property rights. (Civ. Code § 159; *Hogarty* v. *Hogarty*, 188 Cal. 625 [206 P. 79]; *Hensley* v. *Hensley*, 179 Cal. 284 [183 P. 445]; *Huntsberger* v. *Huntsberger*, 2 Cal.2d 655 [43 P.2d 258]; *Brown* v. *Brown*, 83 Cal.App. 74 [256 P. 595]; *Boland* v. *Boland*, 7 Cal.App.2d 401 [46 P.2d 238]; *Robertson* v. *Robertson*, 34 Cal.App.2d 113 [93 P.2d 175]; 3 C.J. 245; 9 R.C.L. 524; 7 Minn.L.Rev. 592.) As said in *Brown* v. *Brown*, 83 Cal.App. 74, at 82 [256 P. 595], "The whole theory of the law has been to prevent . . . agreements which have for their purpose the severance of the marriage relation in the future and not to invalidate agreements where the separation has already taken place or is an instant fact." (See, also, *Boland* v. *Boland*, 7 Cal.App.2d 401, 405 [46 P.2d 238].)

■ Accordingly, by the great weight of modern authority, property settlement agreements are upheld even though made in contemplation of divorce. (*Rhinehart* v. *Rhinehart*, 52 Wyo. 363 [75 P.2d 390]; *Gallemore* v. *Gallemore*, 94 Fla. 516 [114 So. 371]; *Pryor* v. *Pryor*, 88 Ark. 302 [114 S.W. 700, 129 Am.St.Rep. 102]; *Welsh* v. *Welsh*, 230 Mo.App. 1006 [93 S.W.2d 264]; *Miller* v. *Miller*, *supra; Herrin* v. *Herrin*, 103 Mont. 469 [63 P.2d 137]; *Dennison* v. *Dennison*, 98 N.J. Eq. 230 [130 A. 463]; *Shankland* v. *Shankland*, 301 Ill. 524 [134 N.E. 67]; *Henderson* v. *Henderson*, 37 Ore. 141 [60 P. 597, 82 Am.St.Rep. 741, 48 L.R.A. 766]; *Frothingham* v. *Anthony*, 69 F.2d 506; see *Giddings* v. *Giddings*, 167 Ore. 504 [119 P.2d 280]; *Nelson* v. *Vassenden*, 115 Minn. 1 [131 N.W. 794, 795, 35 L.R.A.N.S. 1167]; *Stokes* v. *Anderson*, 118 Ind. 533, 552 [21 N.E. 331, 4 L.R.A. 313]; *Bishop, op. cit., supra,* § 702; note 109 A.L.R. 844.) The rule is stated in 17 Am.Jur., section 499, as follows: "The validity of such agreements depends on whether there is an attempt to obtain a divorce not justified by the real facts and thus to practice a fraud upon the court. . . . Under this rule, where a separation has been induced by the vicious conduct or dis-

ability of one of the parties, without inducement or fault of the other, a contract looking to a settlement of property rights and the proper maintenance of the one not in fault is in no sense repugnant to public policy." The California decisions are in accord with this view (*Cookinham* v. *Cookinham*, 219 Cal. 723 [28 P.2d 1045]; *Huntsberger* v. *Huntsberger, supra; Ex parte Weiler*, 106 Cal.App. 485 [289 P. 645]; *Robertson* v. *Robertson, supra; Queen* v. *Queen*, 44 Cal.App.2d 475 [112 P.2d 755]; *Baxter* v. *Baxter*, 3 Cal.App.2d 676 [40 P.2d 536]; see *Hare* v. *McGue, supra; Boland* v. *Boland, supra; Tripp* v. *Superior Court*, 61 Cal.App. 64 [214 P. 252]; *cf. Howard* v. *Adams, supra.*) It has also been said in this state that property settlements are "highly favored in the law." (*Hensley* v. *Hensley, supra*, at p. 287; *Makzoume* v. *Makzoume*, 50 Cal.App.2d 229, 230 [123 P. 2d 72]; see, also, Lindey, Separation Agreements, Antenuptial Contracts, and Marriage Settlements, p. 385.)

Such contracts made in contemplation of divorce are entered into upon the assumption that divorce will follow. (See *Bishop* v. *Bishop*, —— Mo.App. —— [162 S.W.2d 332, 335].) It would therefore seem proper for the parties to provide for any possible failure of this assumption in their contract. And it has accordingly been held that agreements conditioned upon divorce, in the sense that they are to become effective upon dissolution of the marriage, do not contravene public policy. (*Miller* v. *Miller, supra; Bishop* v. *Bishop, supra; Frothingham* v. *Anthony*, 69 F.2d 506; *Phillips* v. *Phillips*, 39 R.I. 92 [97 A. 593]; *Lubbell* v. *Stolls*, 202 N.Y.S. 229; *cf. Darling* v. *Darling*, 241 App.Div. 57 [270 N.Y.S. 557]; *Maisch* v. *Maisch*, 87 Conn. 377 [87 A. 729]; *Clarke* v. *Clarke*, 42 Times L. R. [Engl.] 132; note 109 A.L.R. 844; see *Stokes* v. *Anderson*, 118 Ind. 533, 552 [21 N.E. 331, 4 L.R.A. 313], 2 *Bishop, op. cit. supra*, § 702.)

Recent California cases have upheld property settlement agreements thus conditioned upon divorce. In *Cookinham* v. *Cookinham*, 219 Cal. 723 [28 P.2d 1045], this court approved a property settlement agreement under which a husband agreed to pay his wife $200 per month for the support of herself and minor child during the pendency of the wife's action for divorce, and thereafter, if the court determined that the wife was entitled to a divorce, the sum of $150 per month for her support until her death or remarriage and $50 per month for the support of the minor child until the latter attained her majority. In rejecting the contention that the

agreement was *contra bonos mores* the court remarked: " . . . it is to be observed that the parties were living separate and apart and the agreement conclusively establishes their intent to amicably settle and adjust all of their property rights. This they were competent to do and were authorized by law to do." In *Ettlinger* v. *Ettlinger*, 3 Cal.2d 172 [44 P.2d 540], during the pendency of the wife's action for separate maintenance, the parties entered into a property settlement agreement under which the husband agreed to pay the wife $250 per month "in the event of a divorce between the parties." Subsequently, and, as the wife contended, in consideration of the execution of the agreement, she changed the form of her action from one for separate maintenance to one for absolute divorce. The validity of the agreement was in issue in the divorce proceedings where the agreement was approved and adopted in interlocutory and final decrees. On appeal from an order reducing the amount of payments, this court held the agreement was immune from judicial modification. The validity of the same agreement was again challenged in *Ettlinger* v. *Ettlinger*, 46 Cal.App.2d 628 [116 P.2d 482]. It was there held the previous decision of the Supreme Court was res judicata upon the issue of the legality of the agreement, and that in the state of the record, a finding that the agreement was *contra bonos mores* would have been entirely wanting in evidentiary support. The court pointed out that it was not claimed that the divorce was obtained by collusion or that the wife did not have a meritorious cause of action for divorce. In *Howard* v. *Adams*, 16 Cal.2d 253 [105 P.2d 971, 130 A.L.R. 1003], this court held an agreement by which defendant undertook to support her niece, if the niece would procure the divorce she contemplated in another state in order to avoid publicity damaging to defendant's social and business connections, was not against public policy. The fact that the husband admitted his marital relations were discordant and that the wife had a good cause of action for divorce was, in the opinion of the court, a complete answer to any contention that the contract was invalid because it might have a tendency to induce, or did in fact, induce, the wife to proceed to obtain a divorce and the husband to permit her to prosecute the action without opposition. In *Queen* v. *Queen*, 44 Cal.App.2d 475 [112 P.2d 755], a property settlement agreement presented to the court for enforcement contained the following provision: "This agreement shall be and become effective if, as, and when within a period of six (6)

months from the date hereof a decree of divorce is entered granting to the party of the second part a divorce from the party of the first part. . . . If a divorce shall not be so granted . . . then this agreement shall be and become forthwith null and void and of no effect. . . .'' In holding the agreement was enforceable, the court answered the contention that the wife was persuaded to obtain a divorce as a result of the execution of the agreement by pointing to the recitals therein that the parties had separated, that the wife was about to institute an action for divorce, and that the parties were desirous of arriving at an agreement respecting the settlement of their property rights and providing for the support of the wife in the event a divorce was obtained. In *Morrow.* v. *Morrow,* 40 Cal.App.2d 474 [105 P.2d 129], the signing of a stipulation by the wife in a divorce action to the effect that she should be awarded $75 a month as alimony was not against public policy, the court stating that the stipulation did not tend to interfere with the real and substantial status of the marriage contract as the parties were already separated. (*Cf. Hochstein* v. *Berghauser,* 123 Cal. 681 [56 P. 547]; *Baxter* v. *Baxter,* 3 Cal.App.2d 676 [40 P.2d 536].)

Respondent relies upon certain decisions in this state to support his contention that a property settlement agreement conditioned upon divorce is invalid, but, with one exception hereafter noted, we find nothing in those decisions inconsistent with the principles expressed in the foregoing cases. In the leading case of *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880], the parties had separated and the wife commenced an action for divorce. During its pendency the parties became reconciled and the action was dismissed. The parties then executed an agreement providing among other things that if the husband should thereafter give the wife cause for divorce and if she should establish a right thereto in an action against him, the husband would pay the wife $10,000 in full settlement of alimony and property rights. After concluding that the agreement therein ''could not but encourage him [the husband] to yield to his baser inclinations, and inflict the injury'' which would compel the wife to obtain a divorce, the court stated: ''It shows by its terms that it is not an agreement to settle property rights accruing by reason of a marital offense already perpetrated and complete as a cause of action for divorce. There is therefore no force in the claim, as applied to this case, that it is . . . valid as a settlement of such rights, even

if it were conceded that such an agreement might under some circumstances be permitted to stand." *Whiting* v. *Whiting,* 62 Cal.App. 157 [216 P. 92], involved an antenuptial contract similar to the contract in the Pereira case. *Newman* v. *Freitas,* 129 Cal. 283 [61 P. 907, 50 L.R.A. 548], involved a contingent fee contract between the wife and an attorney which the court considered tended directly to bring about alienation of husband and wife by offering a stranger a premium to advise dissolution of the marriage ties. The court pointed out, moreover, that the power of the court to compel the husband to pay his wife's counsel fees in a divorce action removed the necessity and reason for the rule permitting contingent fee contracts. (See 21 Va.L.Rev. 446.) In *Moss* v. *Moss,* 20 Cal.2d 640 [128 P.2d 526, 141 A.L.R. 1422], the plaintiff husband sought a declaration of his obligations under a property settlement, the sole consideration for which, he alleged, was a promise by the defendant wife to procure a divorce. The trial court sustained a demurrer to the complaint and this court affirmed the judgment. Since it was admitted by demurrer that the *sole consideration* for the agreement was the promise of the wife to procure a divorce, we assumed for the purposes of the decision that the agreement was invalid and held that the trial court had discretion in a declaratory action to refuse relief where it appeared the plaintiff was a party of equal fault to the illegal transaction. We expressly refrained, however, from passing upon the validity of the agreement.

Respondent also cites *Brown* v. *Brown,* 8 Cal.App.2d 364 [47 P.2d 352] as holding that if it is the essence of the agreement that one of the parties obtain a divorce and if the promises made in contemplation thereof are conditioned upon a dissolution of the marriage, the contract is unenforceable. Although it does not appear in the Brown case that the parties had separated at the time the agreement was entered into, and for that reason the case may be factually distinguishable from the situation here presented, the language of that opinion is hereby disapproved insofar as it is inconsistent with anything said by us here.

It thus appears that with the one exception none of the foregoing cases relied upon by defendant is authority for his position that a property settlement agreement entered into after separation, without collusion, is invalid solely because it is not to become effective unless a divorce is obtained by one of the parties. ■ Defendant contends, however, that the

judgment declaring the agreement invalid must be affirmed because the trial court determined not only that the agreement in question was ''conditioned upon and in contemplation of'' divorce, but also that it was ''for the purpose of promoting an immediate and forthwith dissolution of the marriage.'' While it is true that contracts condemned by the courts usually have been termed ''promotive of divorce'' as distinguished from those ''incidental to divorce'' or ''conditioned upon divorce,'' this terminology is not always accurate or descriptive. The validity of such contracts must be determined in the light of the factual background of each case and considerations of public policy appropriate thereto. Most property settlement agreements are incidental to or conditioned upon divorce, since they are means employed in the disposition of property upon divorce, and they are also promotive of divorce in the sense that an amicable adjustment of property rights facilitates the completion of contemplated divorce proceedings.

Public policy seeks to foster and protect marriage, to encourage parties to live together, and to prevent separation. (*Deyoe* v. *Superior Court*, 140 Cal. 476, 482 [74 P. 28, 98 Am.St.Rep. 73]; 17 Am.Jur. 154; notes 15 So.Cal.L.Rev. 376; 130 A.L.R. 1008.) But public policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed. (*Cf. Brewthauer* v. *Brewthauer*, 45 Cal. App. 759, 761 [188 P. 296].) In the absence of fraud, collusion or imposition upon the court, public policy does not prevent parties who have separated from entering into a contract disposing of their property rights which shall become effective only in the event one of the parties obtains a divorce, even though such a contract may be a factor in persuading a party who has a good cause for divorce to proceed to establish it.

Applying these principles to the facts of the present case we conclude that the agreement is valid and enforceable. Prior to the execution of the contract the parties were living separate and apart as a result of a marital offense committed by the husband which constituted good grounds for divorce. They had no intention or expectation of resuming marital relations. At the time of the commencement of the negotiations which led to the execution of this agreement the domestic status of the parties was unsettled and their relations unsatisfactory. The husband had sued for divorce and the wife had

countered with a suit for separate maintenance and the case had been tried. As appears from the stipulation, the court announced its intention to deny the husband a divorce and to award the wife separate maintenance. The wife did not at any time agree to obtain a divorce and the husband did not agree to aid her in procuring a divorce by refraining from defending against an action or concealing evidence from the court. There is no intimation that the subsequent divorce was collusive. In language of the court in *Morrow* v. *Morrow*, 40 Cal.App.2d 474, 482-483 [105 P.2d 129], the agreement "did not tend to interfere with the real substantial status of their marriage contract as the parties were already separated. They occupied the position of husband and wife in name only. It did not facilitate the divorce any more than the numerous valid property settlements which the courts of this state have recognized and approved."

The judgment is reversed and the cause remanded with directions to enter judgment in accordance with the views expressed herein.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.