[S. F. No. 1953.   Department Two. — April 24, 1901.]

## LILIAN A. HUNTER, Appellant, v. CHARLES H. HUNTER, Respondent.

DIVORCE — DEFENSE OF CONDONATION — PLEADING — DUTY OF COURT — FINDING. — Condonation is a specific defense to an action for divorce; and where such action is contested by the defendant, it should be pleaded like any other defense; though, if the evidence shows condonation, even without a pleading, it would be the duty of the court to find to that effect.

ID. — EXTREME CRUELTY — EXPRESS AGREEMENT TO CONDONE REQUIRED — FINDING AGAINST EVIDENCE. — Where acts of extreme cruelty are established as a ground of divorce, the code requires proof of an express agreement to condone the acts of cruelty; and a finding of condonation, based on letters from the plaintiff to the defendant, showing merely conjugal kindness, from which no express agreement to condone the acts of cruelty can be inferred, is against the evidence.

ID. — CONTEST BY DEFENDANT — UNSUPPORTED FINDING DISREGARDED — JUDGMENT ORDERED FOR PLAINTIFF. — Where the action for a divorce, for the extreme cruelty proved, was contested by the defendant, and the letters were not offered by him for the purpose of showing condonation, which was not pleaded, and the defendant presumably urged all matters of defense available to him, the unsupported finding of condonation will be disregarded, and judgment will be ordered for the plaintiff under the pleadings and proofs.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial.   M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, for Appellant.

N. T. Biddle, and Julian H. Biddle, for Respondent.

THE COURT. — Action for divorce on the ground of extreme cruelty. The court found that defendant "treated the plaintiff in a cruel and inhuman manner, inflicting on her great bodily injury and mental suffering, striking her and otherwise physically abusing her." The fourth finding is, "that, after the commission of the said acts of cruelty, the

plaintiff forgave the said defendant, and condoned the said matrimonial offenses." As conclusion of law, the court found that by reason of such condonation plaintiff is not entitled to a decree of divorce. Appellant claims that the evidence does not sustain the finding of condonation, and she appeals from the judgment and from the order denying motion for new trial.

The evidence showed that the parties were married in Nebraska in 1878, and had lived in Santa Clara County six years previous to the commencement of the action, and that six children were born to the marriage, the youngest now five and the eldest nineteen years. The cruel treatment complained of consisted of successive acts of ill treatment, of which there was abundant evidence, and began about three years before the commencement of the action. It was of such character as not only to impair the health of plaintiff, but, as she testified, to endanger her life. In August, 1897, defendant left his home and went to Nebraska. The complaint was filed March 17, 1898, and defendant returned to California the following month. Plaintiff testified on cross-examination: "He came to the house; we did not receive him very kindly. We did not drive him away. He came in the house and went around to each of the children, and wanted to know if I had a kiss for him. I told him 'no.' That was in April, 1898. He stayed all night and left the next morning. He has been working on various ranches near my home ever since." Defendant introduced no evidence, except to recall plaintiff as his witness, who was shown three letters written by her to defendant after he left his home, August 2, 1897. She admitted that she wrote the letters. She testified: "After my husband went away I had peace with my children. I had peace on the place. It seems as if I could not bear to have him come back again. If he had not written me as he did, I would not have commenced this suit. He said he intended to come back. My husband drove the boys from the ranch, and wanted to keep a hired man." In the first letter dated August 4, 1897, she addresses her husband as "Dear Charlie," and begins by saying, "I wonder where you are to-night, and how you are feeling. We are all well." The letter is devoted to matters relating to the business of the farm, acknowledges the receipt of a letter from defendant, and expresses the "hope to hear again soon," and closes, "Love to all, and write soon to your Lillie." The second letter is dated August 10, 1897, and

is addressed to "Dear Charlie," and states, "Received your letter to-day, written Thursday, the day after you got there. Glad you stood the trip so well as you did." The letter then relates to doings on the farm and what the children had been about, and closes, "Love to all, and hope to hear good news from you soon. . . . Children all send love. . . . A goodnight kiss from your Lillie." The third and last letter is dated August 26th, and is much the same as the other two, minus the proffered kiss. The letters were admitted over plaintiff's objection that they were irrelevant, immaterial, and incompetent. Defendant's counsel stated that he offered them "for the purpose of showing that the witness knew that he [Hunter] was sick, and kept him informed of what she was doing. They are offered in evidence for that purpose." The court interrogated the witness after the letters were read: "Q. *The Court.* Don't you think it is possible for you and your husband to live together?—A. No, sir; if he had been home six months longer, I should have been in my grave. I never expected him to come back and live with me.—Q. At that time you did not intend to sue for a divorce? You really had forgiven him, Mrs. Hunter?—A. No, sir; I did not forgive him. The debts mentioned in the letters were not all paid that year. I have paid a good many of the debts from money taken from the ranch. I borrowed $127 from Nebraska, and that has not yet been paid. In one of the letters my husband wrote me that he had joined the Christian Science Church, and expected to live as long as the longest, he said. This was just before he came back." Defendant here rested.

The answer of defendant did not plead condonation in defense.

Appellant claims that it was error to admit the evidence, because it was offered for a limited purpose, and not to prove condonation, and that there being no issue of condonation presented by the answer, it was error to receive this evidence to prove such issue. It is not necessary to pass upon the admissibility, materiality, or relevancy of this evidence. If the letters be given all the weight which the most liberal interpretation of their meaning would warrant, they do not show condonation; for the code says, neither cohabitation, passive endurance, nor conjugal kindness shall be evidence of condonation of "any of the acts constituting such cause [i. e., the cruelty mentioned in the statute], unless accompanied by an

express agreement to condone." (Civ. Code, sec. 118; *Morton* v. *Morton*, 117 Cal. 443; *Smith* v. *Smith*, 119 Cal. 183.) These letters, being the only evidence from which any agreement can be inferred, fall far short of being "an express agreement to condone."

As condonation is a specific defense to an action for divorce, it should be pleaded like any other defense. It is true that an action for divorce differs from an ordinary proceeding, in that a decree may not be rendered upon the admission of a party, or upon the uncorroborated evidence of either of the spouses. If, therefore, the evidence had shown condonation, it would have been the duty of the court, even without a pleading, to have found to that effect. But as the evidence upon which the court bases its finding of condonation is wholly inadequate, as the letters were not even offered for the purpose of showing condonation, as the case was contested, and presumably the defendant urged all matters of defense available to him, we think this finding may, and should, be disregarded as wholly unsustained, when, clearly, the plaintiff becomes entitled to judgment.

The judgment is therefore reversed, with directions to the trial court to enter judgment for divorce for plaintiff as prayed for, and to award her such other and further relief as under the pleadings and proofs may be equitable.