[Civ. No. 1061.   Third Appellate District.—January 31, 1913.]

## KATE WHINNERY, Respondent, v. JAMES E. WHINNERY, Appellant.

DIVORCE—EXTREME CRUELTY OF HUSBAND—SUPPORT OF JUDGMENT.—In an action by the wife for divorce from the husband for a course of extreme cruelty on his part, it is held that the evidence is sufficient to support the judgment in her favor for his extreme cruelty.

CONDONATION OF EXTREME CRUELTY NOT SHOWN.—Where a course of extreme cruelty on the part of the husband is established, condonation

of the offense is not made out unless there be an express agreement to condone the same.

ID.—DISPOSITION OF PROPERTY—SEPARATE PROPERTY OF WIFE—SUPPORT OF FINDING—INTEREST IN COMMUNITY PROPERTY.—It is held that the evidence is sufficient to sustain the finding of the court that certain property described was the separate property of the wife, and the cause of action for cruelty being established in her favor, it is held that the court did not abuse its discretion in awarding to her also an interest in the community property.

APPEAL from a judgment of the Superior Court of Alameda County. A. J. Buckles, Judge presiding.

The facts are stated in the opinion of the court.

J. K. Johnson; for Appellant.

Edward R. Eliassen, for Respondent.

BURNETT, J.—The action was for divorce on the grounds of intemperance and cruelty. The judgment was in favor of plaintiff, awarding her a divorce on the ground of cruel treatment. Findings were waived. The court recited in its judgment that the "interlocutory decree is hereby made on account of defendant's extreme cruelty toward the said plaintiff." Certain property was also adjudged to be the separate property of plaintiff and a portion of the community property was awarded to her and the balance to defendant.

The points made on the appeal are that the evidence is insufficient to support the judgment, that there was condonation on the part of plaintiff and that the court erred in determining that said property was the separate property of plaintiff.

As to the evidence, there can be no doubt as to its sufficiency to support the conclusion of the trial court. The plaintiff testified: "I am not living with defendant at this time. We have been separated a year. The reason of the separation was his intemperance and his cruelty. He was intemperate, drinking to excess. He started to drink almost immediately after we were married and continued to drink while we were living together. He was drunk frequently. The last year that he lived at home he was drunk almost continuously. He first commenced to be cruel to me about four or

five years ago. He tried to choke me on one occasion. He
repeatedly told me that I was not better than a prostitute;
also told me that I had not a dollar when he married me,
every cent he had, everything he was possessed of, was his,
I had nothing. On one occasion he said that I occupied a
different bed because I had all the men there that I wanted,
the butcher boys and grocer boys. He would stand over me in
a threatening attitude and say those things about the butcher
boys and grocer boys. That was a year ago, in February or
March, a month or two preceding before I insisted on his
leaving home. He would make those statements almost daily.
During the last six months that he was home we quarreled
almost weekly over money matters.''

The daughter, Rose Whinnery, testified that her father ''was
very quarrelsome and abusive, to my mother especially. When
he had been drinking, when he was at home during the last
year he was quarreling with mother almost every day. I
remember when my father tried to choke my mother. I must
have come into the room while they were quarreling. My
father had his hands around my mother's neck. I don't
remember that he said anything. My mother was screaming.
My father had been drinking; his face was flushed; he looked
angry.''

Marjory Whinnery, another daughter, testified that her
father drank to excess and that he quarreled with her mother
several times each week; that he accused her of stripping him
of everything he had, and she corroborated her mother and
her sister as to her father choking her mother.

Comment is unnecessary as to the foregoing testimony, as
it is obviously sufficient to support the conclusion that the
defendant treated the plaintiff in a cruel manner and that
sufficient corroboration appears. That it inflicted grievous
mental suffering and great bodily injury upon the plaintiff
appears also from the testimony in the case, which we deem
unnecessary to cite further upon this point.

As to the claimed condonation, it may be said, in the first
place, that it was not pleaded by defendant and, in the sec-
ond place, that there is no evidence to show condonation, as
defined by the provisions of the Civil Code in cases of this
character. Section 117 of said code is as follows: ''Con-
donation implies a condition subsequent; that the forgiving

party must be treated with conjugal kindness," and section 118: "Where the cause of divorce consists of a course of offensive conduct, or arises, in cases of cruelty, from excessive acts of ill-treatment, which may, aggregately, constitute the offense, cohabitation, or passive endurance, or conjugal kindness, shall not be evidence of condonation of any of the acts constituting such cause unless accompanied by an express agreement to condone."

It is apparent, from the record, that the cause of divorce grew out of the excessive acts of ill-treatment of plaintiff on the part of defendant, and there is no evidence disclosed that there was any express agreement on the part of plaintiff to condone the offense of defendant; hence, condonation was not made out within the contemplation of the statute. (*Morton* v. *Morton*, 117 Cal. 443, [49 Pac. 557]; *Smith* v. *Smith*, 119 Cal. 183, [48 Pac. 730, 51 Pac. 183]; *Hunter* v. *Hunter*, 132 Cal. 473, [64 Pac. 772].)

Concerning the property referred to, there is evidence in the record that defendant had transferred it to plaintiff and the court was entirely justified in the conclusion, from the testimony, that he intended to invest and thereby did invest said property in plaintiff as her separate estate. The conclusion of the court was, therefore, justified by the evidence. But, even if it were not her separate but community property, the court was warranted in setting it aside to her, since the divorce was granted on the ground of cruelty. Section 146 of the Civil Code provides: "In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property, and the homestead, shall be assigned as follows: 1. If the decree be rendered on the ground of adultery, or extreme cruelty, the community property shall be assigned to the respective parties in such proportions as the court, from all the facts of the case, and the condition of the parties, may deem just."

In the present instance there was no decree for alimony or costs or counsel fees in favor of plaintiff and quite a portion of the community property was awarded to defendant. Under the circumstances, the plaintiff being a woman of some years and having two daughters to educate and maintain, and without any other source of income, so far as appears from the record, the disposition made of the property by the

court appears fair and just. At least, there does not appear to have been any abuse of discretion on the part of the court in that respect.

After an examination of the record, we feel constrained to say that there appears to be no ground for interfering with the judgment of the lower court and the order denying a new trial and each is, therefore, affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1913.