[Civ. No. 13917.   Second Dist., Div. Three.   Sept. 23, 1943.]

CHARLES HAMBURGER, Respondent, v. MATHILDE HAMBURGER, Appellant.

H. A. Gebhardt for Appellant.

Roderick Johnston for Respondent.

WOOD (Parker), J.—Defendant appeals from an interlocutory judgment of divorce in favor of plaintiff.

Defendant contends that the judgment was erroneous for the reasons: (1) the court did not make a finding regarding plaintiff's residence; (2) there was no corroboration of plaintiff's testimony that he had resided in California and Los Angeles County the requisite statutory time; (3) there was no corroboration of plaintiff's testimony as to asserted acts of cruelty occurring after the reconciliation; and (4) the court erred in rejecting evidence regarding property rights and alimony.

Plaintiff alleged in his complaint that he had been a resident of California and Los Angeles County for more than one year preceding the date of the complaint; that defendant had treated him in an extremely cruel manner; and that he was willing to pay defendant $50 per month for her support. The allegation as to extreme cruelty was in general terms and did not state specific acts or dates of the alleged cruelty.

Defendant admitted the allegation as to residence, and denied the allegation of cruelty.

The court found that the parties were married in 1930, and separated January 8, 1941; that there was no issue and no community property; and that defendant, without cause,

had treated plaintiff in an extremely cruel manner. No finding was made regarding plaintiff's residence.

Plaintiff testified he had resided in California and Los Angeles County since 1926; that he was a Jew, 62 years of age; that defendant was a German, born in Germany, and was 68 years of age; that they were married in 1930; that they had separated five times—in 1932 for two days, in 1933 about three weeks, in 1934 about three months, in 1936 for two years and three months, and on January 8, 1941; that on the day before the final separation she called him "all kinds of Jews"; that she continuously nagged him, and said, in his presence and in the presence of others, he was no good because he was a Jew, that all Jews were no good, that Hitler was justified in persecuting the Jews; that she said in the presence of Mr. Seebold that plaintiff was "a damn Jew"; that when they would separate she would promise, if he would return, she would treat him differently.

Mr. Seebold, called as a witness by plaintiff, testified that in 1934 he heard defendant say to plaintiff "you damn dirty Jew," and that Hitler should have plaintiff; that also in 1934, on another occasion, he heard her call him a Jew several times. Defendant's motion to strike out the testimony of Mr. Seebold concerning happenings prior to the time the parties were reconciled and began living together again in 1938, after two years' separation, was denied.

Another witness, called by plaintiff, testified that she had known the parties nine years; that "a week or so" after defendant returned from a trip to Germany in 1936 (while the parties were separated), defendant told her that she used the name of her former husband on her trip to Germany because she "didn't like the friends to know that she married a Jew"; that the witness did not remember when she told plaintiff what defendant had said about the name used on that trip (plaintiff said the witness told him in 1940).

It was stipulated that the last witness' husband would testify the same as she did.

Plaintiff's exhibits were: the marriage license of the parties, issued in 1930, reciting that plaintiff was a resident of San Diego County; and a letter written by defendant to plaintiff after they had separated in 1941, which stated in part: "Please give me sign of hope that you to [sic] will forgive and make me happy again. I promise that I will do everything to make you love me again. . . ."

Defendant testified in substance that she was a German and became a citizen of the United States, and' was 68 years of age; that the testimony of the plaintiff and the witnesses called by him was untrue, except she did say to plaintiff, "you Jew," in 1934, in the presence of Mr. Seebold after plaintiff had called her a "German bastard," a "kike," and "lowlife, all kinds of names"; that she was not cruel or unkind to plaintiff; that plaintiff became intoxicated on various occasions, hit defendant, and stayed in various liquor bars until late at night; that they separated four times including a separation for two years or more commencing in 1936; and that when they separated in 1933 and 1934 plaintiff went to San Diego.

A witness for defendant testified that she had known defendant for "a year"; that she knew plaintiff; that she had visited them five times, including Christmas of 1940; that the relations between the parties had always seemed pleasant; that defendant was "always very thoughtful about her husband," and "spoke very kindly of him."

Another witness for defendant testified that plaintiff and defendant lived in her apartment house on Pico Boulevard in 1939 or 1940; that she was not sure how long plaintiff resided there, "a year or more, 9 months to a year"; that the tenants complained about noise made by plaintiff, and on two occasions the witness went to his apartment to quiet him.

As above stated, the court did not make a finding regarding plaintiff's residence. It was stated in the case of *Flynn* v. *Flynn,* (1916) 171 Cal. 746 [154 P. 837] at page 748, that the residence prescribed by section 128 of the Civil Code is "essential to jurisdiction" to grant a divorce. In the case of *Kelsey* v. *Miller,* (1928) 203 Cal. 61 [263 P. 200], it was said at page 88, that the failure to comply with the provisions of section 128 of the Civil Code, forbidding the granting of a divorce unless the plaintiff has been a resident of the state and county for the time specified, was an "error in the exercise of jurisdiction." In the present case, whether it be considered that such residence is "essential to jurisdiction" or that the granting of the divorce without a finding as to residence was an "error in the exercise of jurisdiction," the failure to make a finding as to residence was prejudicial error. In determining the fact whether such residence exists, "the trial court is controlled by the provisions of section 130 of the Civil Code, and cannot act upon the uncorroborated statement, admission, or testimony of the parties." (*Flynn*

v. *Flynn, supra.*) ▇ The admission, in the answer, of the allegation of the complaint as to residence was an admission of a party to the action, and did not obviate the necessity of proof and finding as to residence (*Flynn* v. *Flynn, supra; Eriksen* v. *Eriksen,* (1943) 57 Cal.App.2d 532, 536 [134 P.2d 825]), and did not preclude defendant from asserting on appeal that the court erred in failing to make such a finding. (*Eriksen* v. *Eriksen, supra,* p. 534; *Flynn* v. *Flynn, supra,* p. 748; *Bennett* v. *Bennett,* (1865) 28 Cal. 599.) In the divorce case of *Flynn* v. *Flynn, supra,* the allegation of the complaint as to residence was not denied in the answer, and no finding was made as to residence. The Supreme Court, in reversing judgment for plaintiff, said therein at page 749: ". . . the trial court failed to require the essential proof of residence, and . . . it acted entirely, so far as that question was concerned, on the uncorroborated admissions and statements of the parties. We are satisfied that under such circumstances the judgment cannot be upheld."

▇ Counsel for plaintiff has suggested that the omission in the findings as to residence may be remedied by remanding the case to the trial court, upon the evidence which was before it, with directions that it make a finding as to residence. The record shows, however, there was no proper and sufficient proof of the essential fact of residence. The action was commenced on February 10, 1941. Although plaintiff said he had lived in California and Los Angeles County continuously since 1926, except for short visits, there was evidence that he had resided at times in San Diego County. The marriage license showed that he was a resident of San Diego in 1930. Defendant testified that they lived in San Diego for one year following the marriage, and that plaintiff went to San Diego when they separated in 1933 and 1934, and remained there several days. Mr. Seebold, a witness called by plaintiff, said he saw the parties in front of "their" house in Hollywood in 1934. The other witness called by plaintiff did not state anything concerning residence or where she saw plaintiff. A witness, called by defendant, testified that plaintiff lived in her apartment house on Pico Boulevard "a year or more, 9 months to a year" in 1939 or 1940. Another witness, called by defendant, testified that she was in the home of plaintiff about Christmas of 1940. Even if it be assumed that "the house" and "the home" referred to by the witnesses were in Los Angeles County, it should not be inferred that plaintiff resided in Los Angeles County for 3 months next preceding the commencement of the action, in view of the in-

definite character of the corroborating evidence as to place and time of residence, and in view of the evidence that plaintiff had changed his residence at various times from one county to another. This court, therefore, would not be justified in remanding the case with directions that the trial court make a finding that plaintiff had resided in Los Angeles County for the required statutory time.

Another contention of defendant is that there was no corroboration of plaintiff's testimony as to asserted acts of cruelty occurring after the asserted reconciliation in 1938. Inasmuch as no one other than plaintiff testified that any acts of cruelty occurred after the asserted reconciliation in 1938, of course, plaintiff's testimony as to cruelty during such time was uncorroborated unless there was no condonation or unless condonation was revoked. The evidence offered by plaintiff in corroboration of his testimony related to alleged incidents occurring 5 or 7 years prior to the separation in 1941, i. e., to happenings in 1936 and 1934. Plaintiff argues that ''it does not matter that the corroboration happened to be only as to acts occurring before condonation, because after revocation of the condonation all condoned acts were revived and could be used as grounds of divorce,'' and that such acts ''are pleaded and proven not as grounds of divorce but as grounds for revoking condonation reviving the original cause of divorce.'' Plaintiff cites section 121 of the Civil Code which provides: ''Condonation is revoked and the original cause of divorce revived: 1. When the condonee commits acts constituting a like or other cause of divorce; or, 2. When the condonee is guilty of great conjugal unkindness, not amounting to a cause of divorce, but sufficiently habitual . . . to show that . . . condonation had not been accepted in good faith. . . .'' The argument of plaintiff is based upon the assumption that condonation was revoked. The court did not find there was condonation or that condonation was revoked. Plaintiff did not plead that condonation was revoked, or plead any specific acts of cruelty after the reconciliation in 1938 as a basis for showing that condonation was revoked within the provisions of section 121 of the Civil Code. Since plaintiff did not plead revocation of condonation, but alleged cruelty in general terms without specifying that he would rely upon asserted cruel acts occurring prior to the reconciliation in 1938, defendant was not required to, and apparently for that reason did not, plead condonation in anticipation of a claim that condonation was revoked. Condona-

tion is a special defense and should be pleaded if the complaint is sufficiently specific to indicate that plaintiff will rely upon acts which defendant asserts were condoned. ■ If the evidence, however, shows condonation, it is the duty of the court, even without a pleading, to find to that effect. (*Hunter* v. *Hunter*, (1901) 132 Cal. 473, 476 [64 P. 772].) ■ Irrespective of the general nature of the complaint, the case was tried, as above shown, upon the theory there was condonation in 1938, and that revocation of such condonation was an issue to be determined in the case. Although the evidence showed there was condonation in 1938, and that the parties lived together thereafter about 2 years, and although the parties agreed at the trial there was such condonation, the court did not include a finding that there was condonation. Although revocation of such condonation was a controverted issue at the trial, the court did not make a finding as to whether or not condonation was revoked. Inasmuch as condonation in 1938 stood as an agreed fact at the trial, such condonation should be regarded as continuing until a finding is made that condonation was revoked. ■ Unless condonation was revoked, the evidence concerning asserted acts of cruelty occurring prior to the condonation was inadmissible, and plaintiff's testimony as to asserted acts of cruelty occurring after condonation was uncorroborated. ■ A decree having been granted plaintiff, it appears the trial court considered that plaintiff's testimony as to cruelty, whether it related to acts after or before reconciliation, was corroborated by evidence as to acts occurring prior to the reconciliation. Although all intendments are in favor of the judgment, it cannot be ascertained whether the judgment was rendered upon the basis there was no condonation, and therefore evidence of acts occurring prior to the alleged condonation was admissible; or upon the basis there was condonation which had been revoked, and therefore evidence of acts occurring prior to the condonation was admissible. It is not probable that the court determined there was no condonation since condonation was undisputed. If the court determined there was condonation and that it had been revoked, a question would arise as to the sufficiency of the evidence to support a finding of revocation of condonation. In either event defendant was entitled to findings concerning condonation and revocation of condonation for the reason, among others, that she might be advised whether the judgment was rendered upon the basis of acts committed after the reconciliation, which were uncorroborated; or upon the

basis of acts committed after the reconciliation, which were corroborated by testimony as to acts committed before reconciliation; or upon the basis of acts committed before the reconciliation. It was stated in *Bilger* v. *Bilger,* (1942) 54 Cal.App.2d 739 [129 P.2d 752], at page 742: "The basis of the trial court's decision should appear from the findings."

▪ Condonation and revocation of condonation were material issues. "[W]here a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground ... for reversal upon appeal, provided it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the ,party complaining." (24 Cal.Jur. 940, sec. 186.) The evidence as to condonation, being undisputed, required a finding that there was condonation. A finding that there was condonation would be favorable to defendant, and if condonation was not revoked, plaintiff would not be entitled to a judgment of divorce for the reason that his testimony as to cruel acts after the condonation would stand uncorroborated. As to revocation of condonation, defendant and a witness called by her testified to the effect that there was no revocation. Plaintiff's uncorroborated testimony was in conflict therewith. The evidence, therefore, was sufficient to support a finding that there was no revocation of condonation, which finding would be in favor of defendant. The following statement in *Bilger* v. *Bilger, supra,* at page 743, is applicable to the present case: "In the circumstances she had the right to specific findings as to whether the husband [wife] had committed the acts to which she [he] testified. . . . In the present form of the findings it cannot be ascertained whether the court accepted the husband's version . . . or, believing [believed] the wife. . . ."

▪ The last contention of appellant that the court erred in rejecting evidence regarding property rights and alimony cannot be sustained. The pleadings presented no issue as to property rights. ▪ The defendant did not seek a divorce. Under the pleadings a divorce could be granted only to plaintiff. If plaintiff was not entitled to a decree of divorce, the matter of alimony was immaterial. If plaintiff was entitled to a divorce, he could not be required to pay alimony (*In re Nielsen,* (1937) 19 Cal.App.2d 305, 306 [65 P.2d 360]), and in that event also, the matter of alimony was immaterial.

Judgment is reversed.

Desmond, P. J., and Bishop, J. pro tem., concurred.