[Civ. No. 6973. Third Dist. Mar. 23, 1944.]

MONICA S. BRINER, Appellant, v. C. CONRAD BRINER, Respondent.

James J. Arditto and Emery F. Mitchell for Appellant.

T. L. Chamberlain and Gerald Beatty Wallace for Respondent.

ADAMS, P. J.—Plaintiff, appellant herein, brought this action to compel performance of a separation agreement entered into between the parties on September 22, 1937, wherein defendant, respondent herein, agreed to pay to plaintiff the sum of $100 per month for her individual maintenance, care and support, while she remained single, and also agreed to pay her $7,000 in semi-annual installments of $1,000 each. It was alleged by plaintiff that defendant had not made the monthly payment of $100 for certain months, and that he had also failed to pay $500 due on account of the $7,000 payment.

Defendant filed an answer and cross-complaint in which he denied that he had ever failed or refused to carry out the terms of the contract, alleged that the separation of the parties was agreed upon because of "irreconcilable marital differences," admitted the execution of the separation agreement, but contended that through inadvertence and mistake of counsel who drafted same the agreement as written did not embody all of the terms previously agreed to orally, one of which terms being that plaintiff would not engage in her profession as a physician and surgeon, with which provision, he alleged, she had failed to comply. He prayed that the agreement be reformed so as to include conditions alleged to have been so omitted. Plaintiff, as cross-defendant, denied these allegations. A trial of the issues was had and the cause submitted. Approximately a year later, the cause being still undecided, plaintiff was granted leave to file a supplemental complaint setting up failure of defendant to pay subsequent delinquencies. Defendant, over plaintiff's objection, was then allowed to file an amended answer and an amended cross-complaint. In this amended cross-complaint defendant set up that "during the month of August, 1937, cross-defendant and cross-plaintiff agreed that cross-defendant would secure a divorce

from the cross-plaintiff and that for that purpose, and conditioned thereon, and in contemplation thereof, and to facilitate the securing of said divorce," the parties agreed substantially as alleged in the original cross-complaint. To this cross-complaint cross-defendant answered and denied the foregoing allegation.

After the taking of further testimony in the case the trial court made findings to the effect (Finding VI) that about September 1, 1937, the parties entered into an oral agreement "conditioned upon the plaintiff's securing a divorce from the defendant and in contemplation of such a divorce being secured and to facilitate the securing of said divorce"; that a written agreement was executed about September 22, 1937, and (Finding X) that the execution and delivery of same were "conditioned upon and in contemplation of plaintiff's securing a divorce from defendant, and the thereby promoting of an immediate or forthwith dissolution of the marriage then existing between plaintiff and defendant, and said contract had for its object the dissolution of the marriage contract of said parties and the facilitating of that result by the securing of such a divorce." It also found (Finding XII) that "said oral and written agreements so made in contemplation and furtherance of divorce proceedings between plaintiff and defendant, and for the purpose of facilitating the securing of a divorce by plaintiff," were illegal and void, and (Finding XXIII) that plaintiff did not desire to secure a divorce from defendant and would not have secured said divorce except for the agreements between plaintiff and defendant. It did find, however, that defendant had not paid plaintiff the amounts which in her complaint she alleged to be due her; but in its judgment it denied recovery of any sum whatsoever.

On this appeal it is contended that there is no evidence to sustain the findings aforesaid to the effect that the agreement relied upon by plaintiff is illegal and void as made for the purpose of obtaining a divorce.

Considering first the contract itself which is dated September 22, 1937, it recites that "marital difficulties have arisen between the parties hereto which make a separation of the said parties to be desirable," and that "said parties have agreed to separate." Then follow the provision for the payment of $100 per month for the support of the wife and the additional sum of $7,000, a provision for the custody and

support of two children of the parties, a provision for the wife to have one of the two automobiles belonging to them and certain household effects, all other property of the parties, real and personal, to go to the husband, the wife agreeing to execute deeds to three pieces of real property, and any other necessary instruments. The form thereof is that commonly used in such cases, and it contains, in itself, nothing tending to support the findings of the court that it is invalid for the reasons therein stated. Section 159 of the Civil Code provides that a husband and wife may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation; and (sec. 160, Civ. Code) the mutual consent of the parties is a sufficient consideration for such an agreement.

Turning then to the testimony in the case, it shows a long period of domestic infelicity between the parties who were both doctors of medicine. Respondent himself testified that preceding the making of the agreement there had been "many and various marital difficulties"; that in 1933 there had been a divorce action and an interlocutory decree, at which time the parties were separated, but that they subsequently agreed to stay together because of their children; that that was "all we ever stayed together for after 1933"; that they had had a "turbulent marital history from at least 1933 on"; that they had had "many, many marital difficulties." He further testified that in 1937 plaintiff and defendant and their two children went to the Klamath River, returning the end of August; that two or three days after their return "I told plaintiff that I — that we couldn't go on any longer, and that we would have to get a divorce and separate"; that she agreed that it was necessary, "we were not getting along," but that before she would do that she insisted upon a property settlement; that they agreed she would need $175 per month for herself and the boys, and that in addition to that "I offered her $7,000 property settlement, which was to be paid, a thousand dollars every six months"; that that was satisfactory and agreed; that she wanted the thing written out—she insisted upon being protected; that it was agreed they could not both stay in Auburn; that they went to an attorney, Mr. Lowell, and after that plaintiff went to Carmel where she stayed about three weeks, returning just before the agreement was signed; that she then went to Reno and got

the divorce; that there had been several discussions about divorce between 1933 and 1937, and the only reason they stayed together was because of the children.

Plaintiff herself testified that defendant stated, on their return from Klamath River, "I must have a divorce"; that she asked him why, and he said "he couldn't stand me any longer"; that she asked for time to think it over, and went away; that there had been some discussion about her keeping the home, but defendant said he would not allow that and she must leave town; that he said he would pay her $200 per month, and an additional sum for the children; that she did not then say she would get a divorce but did so on her return; that they then went to the attorney's office and signed the agreement, after which she went to Reno.

Neither party testified that either of them conditioned the property settlement upon the divorce, or the divorce upon the settlement, and we find no evidence that if no divorce was to be had there was to be no contract or that if there was no contract there would be no divorce.

It is not contended that plaintiff did not have ground for a divorce, and certainly when defendant told her he could not stand her any longer and insisted that she must leave Auburn she had such grounds; and there was no impropriety in her desiring that a settlement of their property rights and provision for the support of plaintiff and the children should be made. The parties were doing just what section 159 of the Civil Code provides they may do—agree to an immediate separation and make provision for the support of either of them or their children during such separation.

Respondent, in support of the judgment of the trial court, cites but two cases, to wit: *Brown* v. *Brown*, 8 Cal.App.2d. 364 [47 P.2d 352] and *McCahan* v. *McCahan*, 47 Cal.App 173 [190 P.458]. In the former case the trial court found, regarding a separation agreement entered into between the parties, "that the execution and delivery of said instrument at that time and date was conditioned upon, and in contemplation of, the thereby promoting of an immediate or forthwith dissolution of the marriage then existing between plaintiff and defendant"; and it was held that the agreement was void, so far as it obligated the defendant to make certain installment payments provided therein to be made to the wife by the husband; but it was found that there was ample consideration for

the promise of the husband to pay the sum of $12,500 also provided for in said agreement. The appellate court said, page 367:

"We are of the opinion that the above findings do not support the judgment in plaintiff's favor. Where a husband and wife agree that a divorce shall be obtained by one or the other, and adjust their affairs *in contemplation of a divorce* by entering into a settlement conditioned thereon, of their property rights and make promises of an executory nature pertaining thereto, and such facts are established in a subsequent action on the contract, they have no right to receive the aid of the court in the enforcement of their agreement, which the law condemns as a violation of the policy of the state. If, as the court found, it was of the essence of the agreement, although not stated therein, that plaintiff should obtain a divorce from the defendant, and the promises of the defendant *were made in contemplation of and to facilitate, and conditioned upon, a dissolution of the marriage,* that fact bars a recovery by plaintiff in a suit based on the contract." (Italics ours.)

What facts the court there relied upon as showing that the execution and delivery of the agreement were conditioned upon and in contemplation of a divorce does not appear in the opinion. It is obvious from the somewhat peculiar wording of the court's Finding X in this case, that it was following the language of the finding in the Brown case, and that it relied upon that case in rendering its decision.

In *McCahan* v. *McCahan, supra,* the question before the court was whether a provision in a separation agreement that if a divorce action should ever be instituted between the parties defendant would pay plaintiff $100 in full settlement of her claims for counsel fees and costs, was enforceable. A divorce decree having been granted in favor of the husband, the wife appealed, and sought and was granted an order of court for counsel fees on said appeal, over the objection of plaintiff that the contract limited the amount she was entitled to from him for such fees. It was held that the agreement to pay such fees was *contra bonos mores* and void. But plaintiff's right to counsel fees is not in controversy in this case, and it is interesting to note that the same court that decided the foregoing controversy, and on the same date, sustained the validity of the same separation agreement, except as to attorney's fees, stating that there was no evidence that same was

entered into with the object of dissolving the marriage contract or facilitating that result. It said, pages 182-183:

"Under our code either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried. (Civ. Code, sec. 158.) They may also agree, in writing, to immediate separation, and may make provision for the support of either of them, and of their children during such separation. (Civ. Code, sec. 159.) The agreement in question was apparently drawn pursuant to the authority thus given, and was one which the parties had the right to enter into. (*Pereira* v. *Pereira*, 156 Cal. 1, 4, [134 Am.St.Rep. 107, 23 L.R.A.N.S. 880, 103 P. 488]; *Walker* v. *Walker*, 14 Cal.App. 487, 493, [112 P.479].) Although that portion of the agreement, providing for the payment of an attorney fee to the wife, in the event that either of the parties should ever institute a divorce action against the other, is void (*McCahan* v. *McCahan, ante,* p. 173 [190 P. 458]), it relates to a different subject, *and is entirely distinct, disconnected, and separable from, and does not invalidate, the valid provisions of the contract.* (*Estate of Sloan,* 179 Cal. 393-397 [177 P. 150]; *Mack* v. *Jastro,* 126 Cal. 130, 134 [58 P. 372]; *Beard* v. *Beard,* 65 Cal. 354, 356 [4 P. 229].)'' (Italics ours.)

However, since the decision of the trial court in the case before us, the Supreme Court has rendered its decision in *Hill* v. *Hill,* 23 Cal.2d 82 [142 P.2d 417], which disapproves the Brown case, and, we believe, necessitates a reversal in the case before us. In the Hill case it appears that the parties separated in 1926 and the husband commenced an action for divorce in which the wife filed a cross-complaint for separate maintenance. Two years later, while this action was still pending, the wife called upon the husband's attorney, Mr. Horton, and stated that while she had grounds for divorce she did not desire to commence an action therefor, but would think the matter over, and, if she decided to get one, it would have to be on her terms. The husband then advised the wife that if she did not give him a divorce he would quit the practice of medicine, in which event he would not have enough to pay her anything. There was another conference between the wife and Mr. Horton, at which the matter of support for the wife

and the children was discussed. Subsequently the wife employed an attorney, Mr. Haas, whereupon Mr. Horton prepared and sent to Mr. Haas a proposed settlement agreement which provided that it should not become effective until or unless the wife obtained a divorce. Mr. Haas returned this agreement, together with one prepared by him from which the foregoing condition was omitted. The husband finally signed the latter agreement but it was returned to Mr. Haas with a letter by Mr. Horton, in which it was said that the agreement was to be held by Mr. Haas and not used except in the event of the securing of a divorce. The wife, in August, 1928, filed suit for divorce and the husband answered, both parties requesting the court's approval of the settlement agreement. At the hearing the husband's attorney took no part in the proceedings, the divorce was granted to the wife, and the settlement approved. The husband failed to live up to the agreement, whereupon the wife sued to recover payments due thereunder. The husband then sought to have the agreement declared void on the ground that it was against public policy; and the trial court and the District Court of Appeal (133 P.2d 445) sustained this contention, the latter court saying that a property settlement conditioned upon and made in contemplation that one of the parties should secure a dissolution of the marriage by divorce is against public policy and void. Hearing by the Supreme Court was granted, and that court unanimously reversed the judgment. It said that the evidence clearly showed that the agreement was made in contemplation of divorce and conditioned thereon, but that it is now well settled that a husband and wife may agree to an immediate separation, and *having so agreed, or* having actually separated, may enter into contracts adjusting their property rights; that by the great weight of modern authority property settlements are upheld even though made in contemplation of divorce; that, as stated in 17 Am.Jur., sec. 499, p. 408, the validity of such agreements depends on whether there is an attempt to obtain a divorce not *justified by the real facts,* and thus to practice a fraud upon the court; but that where a separation of the parties has been induced by vicious conduct of one of the parties without inducement or fault of the other, a contract looking to a settlement of property rights and a proper maintenance of the one not in fault is in no sense repugnant to public policy; also that it has been said in this

state that property settlements are highly favored in the law, and that most property settlement agreements are incidental to or conditioned upon divorce, since they are the means employed in the disposition of property upon divorce, and they are also promotive of divorce in the sense that an amicable adjustment of property rights facilitates the completion of contemplated divorce proceedings; that in the absence of fraud, collusion or imposition upon the court, public policy does not prevent parties who have separated from entering into a contract disposing of their property rights which shall become effective only in the event one of the parties obtains a divorce, even though such contract may be a factor in persuading a party who has a good cause for divorce to proceed to establish it.

Applying the principles of the foregoing case to the case before us, it must follow that the separation agreement in controversy should be upheld.

Respondent seeks to differentiate this case by arguing that here plaintiff and defendant agreed that a divorce was to be obtained by plaintiff, and that they adjusted their affairs in contemplation thereof. But so did the parties in *Hill* v. *Hill*. He also argues that the parties were living together when the agreement was executed. But the evidence does not so show. They separated when the wife left Auburn about September 1st, after the husband had told her that he couldn't stand her any longer and that she would have to get a divorce; and there is no evidence that they lived together thereafter.

It is also contended that in the Hill case no evidence was offered tending to show that defendant agreed not to defend an action or to do anything to facilitate the granting of a divorce, while here the evidence shows that the husband did not oppose the divorce and signed whatever papers were requested so that an immediate trial could be had. Obviously the same procedure was followed in the Hill case.

The Hill case is also sought to be distinguished on the ground that the wife did not there agree to get a divorce, while here when the husband demanded that a divorce be had, she agreed to get one. We do not consider this important since the court held in the Hill case that a settlement may be made legally, though made in contemplation of divorce and conditioned thereon. Here, as in that case, there is no evidence that the divorce was secured by collusion, and it is, in

fact, agreed that it was not. Defendant in his answer alleged that the separation of the parties was agreed upon because of "irreconcilable marital difficulties"; and the contract itself recited that marital difficulties had arisen between the parties which made a separation desirable.

The equities of the case before us do not call for any especial consideration for defendant. He has accepted the benefits of the agreement. His own testimony shows that he was the one who desired the divorce and demanded that his wife leave the family home and the city of their residence; that the terms of the agreement were those which he himself proposed, and that, in reliance upon said agreement, plaintiff secured a divorce without having provision made in the decree for either support or a division of community property. Respondent does not contend that the divorce was invalid by reason of collusion, and, in fact, his counsel, in argument before this court, stated that no such contention was made. Obviously, he is in no position to so contend since his testimony shows that within eight months after the divorce he married his office nurse. Furthermore, the idea that the agreement might be set aside as violative of public policy was an eleventh hour idea, and was pleaded in his amended cross-complaint nearly five years after the execution of the agreement and more than a year after he had submitted his original defense and cross-complaint wherein he had appealed to the equity side of the court for reformation of the agreement.

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment in behalf of plaintiff as prayed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 17, 1944, and respondent's petition for a hearing by the Supreme Court was denied May 18, 1944.