the common law rule that actions ex dilecto do not survive." (28 Cal.2d, p. 292.)

Order affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 15, 1948. Edmonds, J., Schauer, J., and Spence, J., voted for a hearing.

[Civ. No. 15902.   Second Dist., Div. Two.   Nov. 20, 1947.]

K. BRAINARD, Respondent, v. R. BRAINARD, Appellant.

Merrill Brown for Appellant.

Leon B. Brown for Respondent.

MOORE, P. J.—Mrs. Brainard appeals from an order deny-
ing the motion to vacate her default and to set aside the ensu-
ing interlocutory decree of divorce. The complaint was filed
January 12, 1946. She filed her answer and cross-complaint
19 days later in which she alleged that a satisfactory property
settlement had been effected on January 25. On February
27, 15 days after the amended complaint had been filed, the
parties stipulated that the cross-complaint should be dismissed.
Appellant defaulted on the first day of March and the inter-
locutory decree was entered March 21. Almost four months,
later, July 17, she served her notice of motion to vacate the
default and to set aside the decree, accompanied by an affidavit
of merits. Subsequently, in August, rebutting affidavits were
filed by respondent to which appellant replied September 17,
1946. The motion was denied on October 2, 1946.

Appellant's notice of motion to vacate her default and to
set aside the decree was based upon the grounds that they were
"obtained by fraud of the plaintiff practiced upon the defen-
dant, and by defendant's inadvertence, surprise, mistake and
excusable neglect." Such motion was accompanied by a copy
of (1) answer to amended complaint; (2) affidavit of appel-
lant; (3) transcript of the proceedings taken at the trial, and
(4) memorandum of appellant's points and authorities. Sub-
sequently, respondent's affidavits were made a part of the
record. The total evidence considered by the trial court upon
the motion consists of a volume in excess of 110 pages. It all
represents a body of conflicting statements by witnesses called
to support the contentions of the respective parties. █ What-
ever might be the impression of the appellate court with
reference to the inferences and findings which should be drawn
from diverse proofs, it is the rule that the findings must be fol-
lowed in the absence of a clear showing that discretion was
abused.. (*Trujillo* v. *Trujillo,* 71 Cal.App.2d 257, 260 [162
P.2d 640] ; *Cooper* v. *Deon,* 58 Cal.App.2d 789, 790 [137 P.2d
733].) █ In all matters in which an issue is tried upon
affidavits it is the rule that those favoring the contentions of
respondent establish not only the facts stated therein but also

all facts which may be reasonably inferred therefrom. (*Doak* v. *Bruson,* 152 Cal. 17, 19 [91 P. 1001]; *Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].)

Not only is the appellant unfortunate in having the findings of the trial court against her contentions but she suffers a technical disadvantage in that while she moved the court to vacate the default and judgment on the ground of fraud as well as the grounds prescribed by section 473, Code of Civil Procedure, the record is utterly devoid of proof that would warrant a finding of fraud on the part of respondent or of inadvertence, surprise, mistake or excusable neglect on the part of appellant. Having evidently discovered that there was a void of evidence to establish any of the grounds named in her motion at the time of its submission, she argued and now contends that the default and the judgment should be vacated on the ground that she "was an innocent and unwilling party to a collusive divorce." Also, she argues that collusion was not included in the notice of her motion "for the reason that the same was not apparent or known to appellant at that time."

Two points are urged as reasons for reversal, namely: (1) appellant is the innocent party and (2) the divorce was collusive. While the appellate court is required to accept the factual determination of the trial court, appellant's challenge warrants a consideration of the evidence in order to ascertain whether the order was arbitrarily derived. She avers the facts of her life with respondent and accuses him of neglect, of deserting his family, of shifting the burden of rearing their three children, of making only infrequent visits to the home after separation, of allowing her meager support, of his refusal to talk with her over the telephone, or to take her to places of entertainment, and of his association with other women.

She alleges that after conferences with her counsel, Mr. Mayo, the latter obtained statements of assets and liabilities of respondent and of his total net income from 1940 to 1944, but not of his gross income for the year 1945; that the property settlement agreement was finally prepared on January 25, 1946; that it was escrowed on the same day with instructions to the effect that if prior to April 1, 1946, "an interlocutory decree of divorce is entered in favor of either of us . . . and if said decree expressly approves said agreement, without res-

ervation of any right of modification and if said decree expressly approves said agreement as a property settlement agreement, without reservation of any right of modification, and if any provisions made in such decree for the support or maintenance of Ruby Clara Brainard are expressly made pursuant to said agreement, then in either of such events you are to deliver said instruments of transfer to the transferees and to deliver to each of us two copies of said agreement.''

Her affidavit complains that during the time of her negotiations for a property settlement she did not read all the pages of the proposed agreement and that it was not approved by the superior court as provided by the escrow instructions. Her averment is that the settlement is unfair in that the total earnings of respondent for 1945 were not disclosed to her; that the home and furniture transferred to her are in a worn-out and dilapidated condition and require immediate and extensive repairs; that her assent to sell what is described as the Pico property was harsh and unfair as said property was likewise the separate property of affiant prior to 1940.

Such averments were contradicted or explained by the affidavits of attorneys Brown and Mayo and of respondent, and the agreement was approved by the court as stipulated in the escrow instructions. A complete report of his financial condition was furnished by respondent to Mr. Mayo, appellant's attorney, showing respondent's total earnings for each of the years from 1940 to 1945 inclusive. As to the condition of the home, appellant knew that as well as anyone prior to her agreement of January 25, 1946, and no deceit on the part of respondent with reference thereto is shown. (See *Hendricks* v. *Hendricks*, 216 Cal. 321, 323 [14 P.2d 83].)

██ Notwithstanding the copious details alleged by appellant to establish that she was the innocent party in her relations with respondent and that she was worsted in the property settlement, the proofs of respondent are such as reasonably to warrant a denial of the motion. His affidavit discloses that for some years appellant's conduct toward him had been continuously and acrimoniously querulous, although respondent even after separation had visited the family at reasonable intervals and brought appropriate gifts to each of them. However, her tirades were so violent that the apparently unavoidable result was the filing of an action for divorce.

Notwithstanding respondent's cooperation in supplying appellant with the accurate statement of his total net income for the six years, he requested no similar statement from her. The

agreement was rewritten several times. Although appellant had urged a sale of the Pico property for $85,000 she refused to execute a deed for the price of $100,000 unless respondent would accede to certain modifications in the property settlement. The agreement provided for the transfer to her of the Altadena home, its furniture, an automobile; for the maintenance of certain insurance policies in favor of the children, for the payment to appellant of $200 and $75 for the children monthly for five years, thereafter $75 monthly to appellant; for him to pay all taxes on their income to December 31, 1945, but not the income taxes on the gain realized from the sale of appellant's one-half interest in the Pico land. In addition to the foregoing, appellant received for her share of the Pico property the sum of $44,593.40 which was substantially one-half of the community property aside from the Altadena home.

From the evidence as to the conduct of the parties in their domestic life it cannot be said that the court's implied finding that appellant was at fault was an unreasonable determination. Neither do the facts show that appellant was worsted by the property settlement.

But in order to upset the decree and perhaps the agreement which settled their property rights and obligations appellant contends that the divorce decree was the result of a collusive agreement and for that reason should be vacated. She amplifies such contention with charges that she was paid a price to stipulate that the case might be tried as a default action. There is no reasonable justification for such claim. Its only factual support lies in the coincidental receipt by her of the sum of $44,593.40 on the same day on which she signed the stipulation. It is true that appellant's counsel stipulated on that day that her cross-complaint should be dismissed and that the case be tried as a default matter. From such coincidence appellant now seeks to invoke the inference that a collusive agreement was made to deceive the court and to effect the entry of a decree not warranted by the evidence in favor of respondent. Neither the concurrence of the stipulation and the payment of the money nor any other event found in the record would justify such an inference. The facts given in testimony before the court as well as many incidents recited in respondent's rebutting affidavits would have justified a decree in his favor, since the truth of them was established to the satisfaction of the court below.

It is a common practice in divorce litigation where statutory grounds exist for the offending party to withdraw from

the contest after a settlement has been effected concerning the support obligations and property rights of the parties. ▆ The law imposes no duty upon any person to defend a divorce action, and good morals do not require such defense by the offending party. It is not collusion for both spouses to desire a divorce or for either in aid of such desire to withdraw from a controversy after a long period of domestic infelicities. (*Briner* v. *Briner*, 63 Cal.App.2d 429, 438 [146 P.2d 709]; *Erwin* v. *Erwin*, (Tex.Civ.App.) 40 S.W. 53, 54.) On the contrary, it is the duty of a wife when conscious of having done cruel acts to her husband, as appellant confessed in October, 1945, in letters to the brother-in-law of respondent, not to engage in shadow boxing merely to lengthen the record or to establish a semblance of right on her part. Therefore, appellant's withdrawal from the contest was in all respects regular and proper.

▆ But the contention that she was paid a consideration for the stipulation is as absurd as it is unjust. The stipulation was without consideration to either party. Its sole effect was to erase appellant's cross-complaint and to indicate that she would not answer the amended complaint. If the stipulation had in fact been a binding agreement on appellant not to answer, no price was paid for it. The implications of appellant's argument are: (1) that the $44,593.40 was payable to her only in the event the property settlement should become effective on February 27, 1946; (2) that some inducement was necessary to cause respondent to pay her the sum on that day; (3) that her stipulation to withdraw her cross-complaint and not to contest the divorce is proof of depravity or corruption in the heart of respondent. Such implications vanish in the presence of the testimony of respondent's counsel. He established that in her cross-complaint filed February 1, 1946, appellant verified that a property settlement "fair and equitable" had been agreed to; that at the time of the sale of the Pico property an escrow was created with the Security First National Bank which provided that appellant should be paid as her share of the proceeds the sum of $44,593.40; that escrow instructions were executed by the vendors on the very day they made their property settlement; that such escrow was closed on February 26, 1946, and on the following day appellant's check was delivered to her attorney. It thus appears beyond a doubt that appellant would have received her check even though she had contested the action.

The explanation of appellant's withdrawal from the contest was the discovery by her attorney (1) that the executory obligations of the settlement could be enforced by contempt proceedings, and (2) that while the sums payable to her by respondent would be her taxable income under sections 22(K) and 23(U) of the Internal Revenue Code [26 U.S.C.] if she should obtain the divorce, yet under section 22k of the same code those payments would not be taxable to her if the decree should be entered in favor of respondent. (See Regulations 111, Income Tax, Internal Rev. Code Section 29.22k.) Because of these discoveries appellant's counsel wisely advised her to execute the stipulation. ■ When a divorce is granted to a husband his continuing obligation to support his wife ceases. (*Lampson* v. *Lampson,* 171 Cal. 332, 333 [153 P. 238] ; *Hamburger* v. *Hamburger,* 60 Cal.App.2d 530, 538 [141 P.2d 453].) ■ Payments made by him subsequently to a decree in his favor are deemed a part of the property settlement and are therefore not taxable to the wife under the cited provision of the Internal Revenue Code. (*Hogarty* v. *Hogarty,* 188 Cal. 625, 627 [206 P. 79].) ■ The stipulation was made a part of the record but before it was signed appellant received a copy of the income tax statement and instructed her attorney that ''she wanted a divorce decree entered by April 1, 1946, in order to put the property settlement agreement into effect and that she didn't care which of the parties obtained the decree.'' It follows that since respondent's agreement to pay the income taxes on all sums paid to appellant except on her share received for the Pico property was his legal obligation it constituted no consideration for the stipulation. And since no price was paid for the stipulation and no agreement was made to withhold evidence from the court or to influence its decision by fraudulent means, the execution of the document was in no sense improper. (Bishop's Marriage, Divorce and Separation, vol. 2, § 697.) ■ Such an agreement is not unlawful and is not a legal ground for vacating a divorce decree. (*Hill* v. *Hill,* 23 Cal.2d 82, 93 [142 P.2d 417].) ■ When a marriage has become intolerable and its legitimate ends have been frustrated it is proper for, if not the duty of, the parties themselves to adjust all matters with respect to their joint and community properties and amicably to settle all questions relative to the obligations of each for the family support and maintenance. (*Hill* v. *Hill, supra;* *Briner* v. *Briner, supra.*)

The only authorities cited by appellant in support of the proposition that "the court will set such a divorce aside upon its own motion" are *Rehfuss* v. *Rehfuss*, 169 Cal. 86 [145 P. 1020], and *Mulkey* v. *Mulkey*, 100 Cal. 91 [34 P. 621]. Both of these cases are distinguished by the facts that in one the collusive agreement was forced by fear of losing her child and in the other it was induced by fraud. (See *Bancroft* v. *Bancroft*, 178 Cal. 359, 362 [173 P. 579, L.R.A. 1918F 1029].)

It is true that the courts are obliged to protect the marriage status. (*Landon* v. *Landon*, 74 Cal.App.2d 954, 958 [169 P.2d 980].) But this rule does not enter into the consideration of the claim of a party that her motion to vacate a judgment was unjustifiably denied. ▮ Such motion is to be determined, in the exercise of a sound discretion, from a review of all the evidence submitted and not from the mere caprice of a disappointed litigant. (*Elms* v. *Elms*, 72 Cal.App.2d 508, 513, 519 [164 P.2d 936].)

The order is affirmed.

McComb, J., and Wilson, J., concurred.